United States Court of Appeals,

Fifth Circuit.

No. 91-4561.

David Andrew BIRDWELL, Petitioner-Appellee,

v.

Jack SKEEN, Jr., Criminal District Attorney of Smith County, Texas, Respondent-Appellant.

Feb. 24, 1993.

Appeal from the United States District Court for the Eastern District of Texas.

Before KING, JOHNSON and DUHÉ, Circuit Judges.

JOHNSON, Circuit Judge:

In May of 1986, David Birdwell, while incarcerated in a federal prison, requested expeditious adjudication of criminal charges filed against him in Smith County, Texas, under the Interstate Agreement on Detainers Act ("IADA" or "Detainers Agreement"). The State brought him to trial 197 days later. Birdwell, arguing that Texas violated the speedy trial provisions of the IADA, filed this petition for habeas corpus,[1] which the federal district court granted. We affirm.

I. *Facts and Procedural History*

In June of 1985, David Birdwell kidnapped a woman at gunpoint, locked her in the trunk of her car, and used that car in a bank robbery in Smith County, Texas. Federal officials arrested him in Mississippi one month later. Birdwell pleaded guilty to a federal bank robbery charge and was sentenced to imprisonment for a term of twenty years.[2] In September of the same year, Birdwell was indicted for the kidnapping and bank robbery in Smith County.

---

[1] Birdwell attempted to join the Attorney General of the State of Texas as a necessary party in this habeas corpus action. However, the Attorney General filed a motion to be dismissed from this action, asserting that the Smith County Criminal District Attorney had lodged the detainer against Birdwell, not the State of Texas. He, therefore, contended that the Smith County District Attorney, not the Attorney General, was the proper respondent. The District Court granted the motion to dismiss, and the Smith County District Attorney became the respondent.

[2] Birdwell appealed to this Court, urging that he be allowed to revoke this federal plea because of an alleged breach of the agreement by the State of Texas. *United States v. Birdwell,* 887 F.2d 643 (5th Cir.1989). This Court determined there that this application for writ of habeas corpus should be resolved prior to reaching the merits of that appeal.

Although Smith County officials knew of Birdwell's detention in Mississippi, they apparently lost contact with Birdwell. They did not learn of his incarceration in the federal prison in Leavenworth, Kansas, until February of 1986. Smith County lodged a detainer against Birdwell on April 16, and Birdwell responded by requesting that the State expeditiously dispose of the charges in accordance with the IADA. The Smith County prosecutor received the request on May 19, and Birdwell arrived in the County on August 11. Birdwell requested and received the assistance of a court-appointed attorney on that same day.

Birdwell filed a motion to dismiss his indictment on August 19, because of alleged Texas Speedy Trial Act violations. During the August 22 hearing on the motion, the State requested a continuance so that it could determine whether it needed the testimony of its investigator, who was unavailable due to a foot injury. Although the court granted a one-week continuance, the hearing did not reconvene until three weeks later. At that hearing, held on September 12, 1986, the trial court overruled Birdwell's motion to dismiss.

Asserting his speedy trial rights under the IADA, Birdwell filed a motion on November 11, 1986, urging the court to begin his trial one week later. He claimed that November 17, 1986, was the last date on which his trial could legally begin.[3] The court overruled his motion on November 12. On November 25, Birdwell filed yet another motion to dismiss. This time he alleged that the State had violated his speedy trial rights under the IADA. Once again the state court overruled his motion. Birdwell's state court trial began on December 2, 1986, 197 days after Smith County received Birdwell's request for swift disposition of the outstanding charges. The jury found him guilty, and he was sentenced to imprisonment for seventy-five years.

Birdwell appealed to both the Texas Court of Appeals, and later, to the Texas Court of Criminal Appeals. The former court affirmed his conviction, holding that the IADA provisions had not been violated. The latter court declined to hear the case. Having exhausted his state-law remedies, Birdwell has here turned to the federal courts. Specifically, Birdwell filed an application for writ of habeas corpus in the federal district court which was granted. 765 F.Supp. 1270. The

_____

[3]The actual date was November 15, 1986; however, that date fell on a Saturday.

State appeals.

The State argued there, as it does before this Court, that it had not violated the IADA speedy trial provisions because the state trial court had properly granted a continuance. The State also argues that certain time periods should not count against it because, according to the State, Birdwell's requests and motions caused delays which rendered him unable to stand trial.

## II. *Discussion*

### A. IADA BACKGROUND

The IADA is a congressionally sanctioned compact which the United States, 48 states, the District of Columbia, Puerto Rico, and the U.S. Virgin Islands have adopted.[4] *See Carchman v. Nash,* 473 U.S. 716, 719, 105 S.Ct. 3401, 3403, 87 L.Ed.2d 516 (1985); TEX.CODE CRIM.PROC.ANN. art. 51.14 (Vernon Supp.1992) (Historical and Statutory Notes). The purpose of the IADA is to provide for the speedy disposition of charges filed in one jurisdiction against prisoners who are serving sentences in another jurisdiction. TEX.CODE CRIM.PROC.ANN. art. 51.14(I). Prior to the passage of the IADA, a jurisdiction could file a detainer[5] on a prisoner and refuse to prosecute its case until the prisoner's release from incarceration in the first jurisdiction.

Long-outstanding detainers disadvantage prisoners in several significant ways. *See* Thomas R. Clark. *The Effect of Violations of the Interstate Agreement of Detainers on Subject Matter Jurisdiction* 54 Fordham L.R. 1209 n. 12 (1986). First and foremost, delays in prosecution jeopardize prisoners' ability to defend themselves in court because memories fade and witnesses disappear. S.REP. NO. 1356, 91st Cong., 2nd Sess. *reprinted in* 1970 U.S.C.C.A.N. 4864. Second, many institutions keep prisoners who have detainers lodged against them in closer custody. Institutions might also restrict many of those prisoners' privileges and sometimes deem the prisoners

---

[4]Louisiana and Mississippi are the only states which have not enacted the IADA.

[5]A detainer is a document which a criminal justice agency sends to the institution in which the prisoner, who is the subject matter of the detainer, is incarcerated. The detainer asks the institution to hold the prisoner for the agency or notify the agency when the prisoner's release is imminent. *Carchman v. Nash,* 473 U.S. at 720, 105 S.Ct. at 3403. Agencies generally file detainers because the prisoner has outstanding criminal charges or sentences within the agencies' jurisdiction. *Id.*

ineligible for desirable work assignments or good time credit. *Id.* Finally, because of the uncertainty of their futures, prisoners with outstanding detainers sometimes lose interest in rehabilitative, educational, and other institutional opportunities. *Id. See also Carchman,* 473 U.S. at 720, 105 S.Ct. at 3403.

To combat the negative effects of longstanding detainers, Congress passed the IADA.[6] This agreement allows prosecutors in one jurisdiction to acquire the presence of defendants imprisoned in other jurisdictions for trial prior to the expiration of their sentences.[7] After the prosecutor places a detainer on a prisoner, that prisoner may request speedy disposition of the charges under article III of the Detainers Agreement. Once notified of the prisoner's request, the prosecutor then has 180 days to bring the prisoner to trial. If the prosecutor exceeds those 180 days, the charges are dismissed with prejudice and the detainer becomes invalid.[8]

B. IADA APPLICATION

Against this background, the Court must determine whether the State violated IADA provisions in its prosecution of David Birdwell. More particularly, we must define the contours of

---

[6]Article I of the Detainers Agreement states in part:

> [t]he party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations, or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation.
>
> Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges.

TEX.CODE CRIM.PROC.ANN. art. 51.14(I). *See also* S.REP. NO. 1356, 91st Cong., 2nd Sess. *reprinted in* 1970 U.S.C.C.A.N. 4864.

[7]Governors have the right to refuse the release of the prisoner, however.

[8]Article V(c) provides that

> in the event that an action on the indictment, information, or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III or Article IV hereof, the appropriate court of the jurisdiction where the indictment, information, or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.

TEX.CODE CRIM.PROC.ANN. art. 51.14(V)(c).

the IADA with respect to its speedy trial, continuance, and ability-to-stand-trial provisions.

*1. Standard of Review*

The IADA is a congressionally sanctioned compact, so its interpretation is a question of federal law. *Cuyler v. Adams,* 449 U.S. 433, 442, 101 S.Ct. 703, 709, 66 L.Ed.2d 641 (1981). Thus, the Court must use Federal, not Texas, rules to interpret the Agreement. *Carchman,* 473 U.S. at 719, 105 S.Ct. at 3403. Further, although this Court has traditionally accorded trial courts wide discretion in granting or denying continuances, *Resolution Trust Corp. v. Kemp,* 951 F.2d 657, 663 (5th Cir.1992), continuances under the IADA are unique. The standard of review for the grant or denial of IADA continuances which toll the running of the speedy trial period is likewise unique.[9] The IADA sets forth five distinct requirements for obtaining such a continuance.[10] First, the court must have competent jurisdiction. Second, the grant of the continuance must be in open court. Third, the defendant and/or his attorney must be present. Fourth, the movant must demonstrate good cause in open court, and finally, the length of the continuance must be reasonable or necessary.[11] Compliance with the first requirement is a question of law, which this Court reviews *de novo.* The second and third requirements present questions of fact, and the Court will reverse the district court's findings thereon only if those findings are clearly erroneous. Conformance with the fourth and fifth requirements is a mixed question of law and fact which, again, this Court reviews *de novo.*

*2. Starting the Speedy Trial Period*

---

[9]Courts still have wide discretion in granting continuances; however, unless those continuances comply with the IADA requirements, they will not toll the speedy trial period.

[10]The IADA states that "for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." TEX.CODE CRIM.PROC.ANN. art. 51.14(III)(a).

[11]Such explicit requirements are indubitably a reflection of the signatory states' great concern with the harmful effects caused by detainers. *See* Thomas R. Clark, *The Effect of Violations of the Interstate Agreement of Detainers on Subject Matter Jurisdiction,* 54 Fordham L.R. 1209 n. 136 and accompanying text (1986). Birdwell experienced some of those effects: The Federal Prison Classification Board placed Birdwell in the highest security level solely because of the detainer lodged by Smith County. Further, the two Prison Program Review reports in the record state that one of the considerations in designing Birdwell's prison program was the detainer. Finally, Birdwell testified before the state court at the hearing on his first motion to dismiss that he was not allowed to accumulate good time credit because of the detainer.

The State first argues that the 180-day period did not begin to run until the Smith County District Attorney received Birdwell's request on May 19, 1986 ("receipt theory").  Birdwell argues that the period began when he executed the request on May 8 ("execution theory").[12]  This Court must therefore construe the 180-day speedy trial provision in the IADA.[13]  The Court's first task in statutory interpretation is to review the language of the statute.  In deciding between different alternatives, courts should reject interpretations which lead to unreasonable results in favor of those which produce reasonable results.  *In re Ripley,* 926 F.2d 440, 448 (5th Cir.1991).  Further, to discern unexpressed congressional intent, courts should refer to the legislative history of the act.  *Boureslan v. Aramco,* 857 F.2d 1014, 1022 (5th Cir.1988), *aff'd sub nom. EEOC v. Arabian American Oil Co.,* --- U.S. ----, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991).

The language of the IADA reveals t hat the 180-day period does not commence until the

---

[12]Interestingly, Birdwell contended in his November 11, 1986, motion for speedy trial that the 180-day period began when the Smith County prosecutor received the request on May 19, 1986. Record at 155.

[13]The provision requires the prisoner to "be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition ..."  TEX.CODE CRIM.PROC.ANN. art. 51.14(III)(a).

Courts are split on when the 180-day period begins, for the language of the IADA is less than crystal clear.  Some courts hold that the period starts when the prisoner executes the request.  *E.g. State v. Mourey,* 64 Ohio St.3d 482, 597 N.E.2d 101, 105 (1992); *Commonwealth v. Martens,* 398 Mass. 674, 500 N.E.2d 282, 285 (1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1982, 95 L.Ed.2d 821 (1987); *Pittman v. State,* 301 A.2d 509, 512 (Del.1973); *State v. Angelone,* 837 P.2d 656, 660 (Wash.Ct.App.1992).

However, the majority of courts hold that the period begins only when the prosecutor and the appropriate court receive the request.  *E.g. People v. Fex,* 439 Mich. 117, 479 N.W.2d 625, 626 (Mich.), *cert. granted,* --- U.S. ----, 112 S.Ct. 1935, 118 L.Ed.2d 542 (1992); *State v. Braswell,* 194 Conn. 297, 481 A.2d 413, 417 (1984), *cert. denied,* 469 U.S. 1112, 105 S.Ct. 793, 83 L.Ed.2d 786 (1985); *State v. White,* 234 Kan. 340, 673 P.2d 1106, 1110 (1983); *People v. Hood,* 223 Ill.App.3d 157, 164 Ill.Dec. 851, 854, 583 N.E.2d 1173, 1176 (1991), *appeal denied,* 144 Ill.2d 638, 169 Ill.Dec. 147, 591 N.E.2d 27 (1992); *State v. Whittemore,* 166 Wis.2d 127, 479 N.W.2d 566, 569 (Wis.Ct.App.1991), *review denied,* --- Wis.2d ----, 482 N.W.2d 107 (1992); *Ravenscraft v. State,* 753 S.W.2d 741, 742 (Tex.Ct.App.1988); *Oregon v. Arwood,* 46 Or.App. 653, 612 P.2d 763 (1980); *People v. Bielecki,* 41 Colo.App. 256, 588 P.2d 377, 378 (Colo.Ct.App.1978); *State v. Ternaku,* 156 N.J.Super. 30, 383 A.2d 437, 439 (App.Div.), *certif. denied,* 77 N.J. 479, 391 A.2d 494 (1978); *State v. Plant,* 532 S.W.2d 900, 902 (Mo.Ct.App.1976).

prisoner has caused the proper officials to receive the request;  that is, when the prosecutor has obtained the request.  This is particularly so, since the key word in the 180-day provision is "delivered," not "sent," as used in subsection b, or "executed," as argued by Birdwell.  *Whittemore,* 479 N.W.2d at 569 (asserting that the IADA drafters recognized the difference between the words "delivered," used in subsection a, and "sent," used in subsection b;  determining that had the drafters intended the 180-day period to begin when the prisoner gives the request to the prison officials, it would likely have used the phrase "shall have caused to be *sent*" rather than "shall have caused to be delivered").

Also, the execution theory could lead to illogical and unjust results.  For under that theory, a defendant could write out his request and keep it in his cell for 180 days.  Because of the state's failure to bring the prisoner to trial within that 180-day period, the court would be required to dismiss the indictment with prejudice.  The execution theory would likewise require dismissal with prejudice if the warden forgot to send the request or if the postal service lost it, and the prosecuting officials never received or learned about the request.[14]

Legislative history supports the receipt theory.  The Senate Judiciary Committee Report on the IADA explained that "[a]ny request [of the prisoner for trial on pending charges] is transmitted through the warden to the proper official in the other jurisdiction who *then* has 180 days to bring the prisoner to trial."  S.REP. No. 1356, 91st Cong., 2d Sess. (1970), *reprinted in* 1970 U.S.C.C.A.N. 4864 (emphasis added).  Indeed, this Court intimated in *Gibson v. Klevenhagen* that the Fifth Circuit follows the receipt theory.  777 F.2d 1056, 1057 (5th Cir.1985).  The Court stated in dicta that the IADA requires a prisoner to "be brought to trial within 180 days *after he delivers to the prosecuting officer and appropriate court* written notice of his place of imprisonment and his request for a final disposition of the indictment against him."  *Id.* at 1058 (emphasis added).  That which we implied in *Gibson,* we now hold:  the 180-day period commences when the requisite officials receive the prisoner's request.  In this case that period began on May 19, 1986.

---

[14]The warden who mails the request and the postal service which delivers the request are agents of the prisoner.  Until their tasks are complete, the prisoner has not completely executed his request.

*3. Speedy Trial Exceptions*

The IADA provides only two exceptions to the 180-day speedy trial requirement. Article III(a) states that the 180-day period is subject to any necessary or reasonable continuance based upon good cause which is shown in open court when the prisoner or his counsel is present. Article VI(a) tolls that period when the prisoner is unable to stand trial. The State contends that both of these provisions operated to toll the speedy trial period in this case. We disagree.

a. Continuance

The State argues that the one-week continuance granted after Birdwell's first motion for dismissal, along with the subsequent two-week postponement, sufficiently complied with the article III(a) continuance requirements. Birdwell proffers several reasons to support his argument to the contrary.

i. Texas Procedural Requirements

Birdwell first asserts that there was no continuance granted because the State orally moved for a continuance in contravention of article 29.03 of the Texas Code of Criminal Procedure, which requires motions for continuances to be written. This argument is completely without merit. The Texas Court of Criminal Appeals has determined that granting an oral motion for a continuance is within the discretion of the trial judge. *Martinez v. Texas,* 489 S.W.2d 563 (Tex.Crim.App.1972). Thus, the court's granting an oral, rather than a written, motion for continuance was inconsequential.

ii. Continuances Only for Trials

Citing the Federal and Texas Speedy Trial Acts, Birdwell next argues that courts can only grant continuances under the IADA when the 180 days will soon expire, and then only to extend the commencement date of trial. He asserts that courts cannot continue hearings on pretrial motions. Birdwell's reliance on the Speedy Trial Acts is misplaced. While the Speedy Trial Acts may provide some instruction on the IADA speedy trial provisions, they are certainly not controlling. Neither act was in existence when Congress formulated and passed the IADA.[15] The drafters of the antecedent

---

[15]The federal Speedy Trial Act was enacted in 1974. 18 U.S.C. § 3161. The Texas Speedy Trial Act, which the Texas Court of Criminal Appeals declared unconstitutional in 1987, *Meshell v. Texas,* 739 S.W.2d 246 (Tex.Crim.App.1987), was enacted in 1977. TEX.CODE

legislation, the IADA, enacted in 1970, could not have incorporated or even considered the provisions of the subsequent legislation, the Speedy Trial Acts.

Further, contrary to Birdwell's contention, neither of the Speedy Trial Acts restricts continuances solely to extending the commencement dates of trials. On the contrary, those provisions give courts discretion to grant or deny motions for continuances at any juncture in the prosecution process. Indeed, under those statutes, the determination of whether to grant or deny a continuance does not turn upon timing, but upon justice and necessity. *See* 18 U.S.C. § 3161(h)(8)(A) (excluding from time calculations "[a]ny period of delay resulting from a continuance granted ... if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial"); TEX.CODE CRIM.PROC.ANN. art. 32A.02 § 4(12) (declared unconstitutional by the Court of Criminal Appeals) (excluding delays resulting from continuances "justified by exceptional circumstances.").

The language of the IADA is dispositive. It simply provides "that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." TEX.CODE CRIM.PROC.ANN. art. 51.14(III)(a). Where the language of a statute is clear and unambiguous, courts should not undertake to add to or detract from its provisions. Any such revision should be effected by legislative, not juridical, powers. In this case, the IADA places no restrictions upon the timing of continuances, and this Court declines to amend the IADA to so do.

### iii. IADA Procedural Requirements

Birdwell finally argues that even if the court did grant a continuance, such continuance, for which he contends no good cause existed, endured at most for one week. We agree. The three-week postponement in this case failed to comply with the IADA continuance requirements in several respects. First and foremost, the state court, which had competent jurisdiction, granted only one, one-week continuance in open court in the presence of the Birdwell's attorney. However, the additional two-week period did not comply with four of the five IADA requirements. The court did

---

CRIM.PROC.ANN. art. 32A.02. The IADA was enacted in 1970. 18 U.S.C.App. III.

not grant that postponement in open court or in the presence of either Birdwell or his attorney. The record reveals no good cause for granting the postponement, and neither party contends that the postponement was reasonable or necessary.

Yet the State urges the Court to count that two-week period against Birdwell, since the postponement cannot be directly attributed to the State. The State, however, fails to properly take note of the IADA's mandate that the Detainers Agreement "be liberally construed so as to effectuate its purposes." TEX.CODE CRIM.PROC.ANN. art. 51.14(IX)(a). The purposes of the IADA are to provide for the expeditious disposition of outstanding charges against persons imprisoned in other jurisdictions. *See infra* section II(A). The Court finds that a postponement like the one at issue in this case—whether it was granted *ex parte* or *sua sponte* or occurred accidentally—is incompatible with those purposes.

If the speedy trial period could be tolled by unexplained extensions of continuances simply because the record fails to attribute them to the prosecution, the speedy trial provision would, in effect, be rendered a nullity. For a trial court could grant a one-week continuance, but not reconvene for weeks or months. And although no party had demonstrated good cause for the additional postponement in open court and in the presence of the defendant and/or his attorney, not one day of that "super-continuance" would count in the speedy trial computation. We believe that such a rule would not only render the explicit continuance requirements surplusage, but would also encourage prosecutors to obtain *ex parte* continuances and "busy district courts" to grant *sua sponte* continuances. Such clever maneuvering around the IADA provisions would thwart the purposes of the IADA and chisel away defendants' rights to a speedy trial under the agreement. We therefore hold that the additional two-week postponement did not toll the 180-day period. *See Johnson v. Stagner,* 781 F.2d 758, 763 n. 8 (9th Cir.1986) (determining that "responsibility for undocumented continuances cannot simply be imputed to a defendant."); *Stroble v. Anderson,* 587 F.2d 830, 839-40 (6th Cir.1978), *cert. denied,* 440 U.S. 940, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979) (holding that informal methods of granting continuances are inconsistent with the requirements of the IADA); *United States v. Ford,* 550 F.2d 732, 743 (2d Cir.1977), *aff'd* 436 U.S. 340, 98 S.Ct. 1834, 56

L.Ed.2d 329 (1978) (asserting that the defendant's rights to a speedy trial "may be whittled away in the non-adversary context of *ex parte* communications between the government and the court.").

The Court now turns to the one-week continuance which the trial court explicitly granted. Although Birdwell did not object to that continuance, he did not consent to it either. The United States Supreme Court has made it clear that a valid waiver is the "*intentional* relinquishment or abandonment of a known right or privilege." *Brewer v. Williams,* 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)) (emphasis added). The Court will not find an intentional relinquishment of a right from a silent record. *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969). Thus, Birdwell's silence, when the court granted the State's motion for a continuance, did not constitute a waiver of his speedy trial rights under the IADA.[16] *See Brown v. Wolff,* 706 F.2d 902, 907 (9th Cir.1983).

The court was therefore required to find good cause for granting the continuance. The State contends that good cause existed because it desired the presence of an investigator, Max Scott, who was unavailable due to a foot injury. The State asserts that during the hearing on August 22, which occurred three days after Birdwell filed his motion to dismiss, it thought that Scott's testimony was necessary.[17] Appellant's Brief at 11. However, the record reveals otherwise. It shows that the State was unsure whether it needed the testimony. In fact, the court granted the State's motion for a continuance so the State could determine *if* the testimony was needed.[18]

---

[16]This is particularly so, in a case such as this. Birdwell asserted his speedy trial rights three different times between September and November 1986.

[17]The State failed to explain why it could not have talked with Scott about his testimony between the time Birdwell filed the motion, August 19, and the hearing, August 22. Scott came to work, at least for a short period of time, on August 20, and the State does not contend that his foot injury or the treatment therefor affected his ability to communicate. Neither the record, the briefs, nor the oral arguments suggest that the State could not have at least discussed the testimony with Scott by telephone or obtained any needed testimony by affidavit.

[18]The court asked the District attorney, "[w]hen do you think you will be able to determine *if* your investigator, *if his testimony is necessary* ...*"* The District Attorney answered that he was not certain and suggested reconvening in a week. The court then granted the requested continuance. Record at 457 (emphasis added).

Ultimately, the investigator did not testify at all.[19]  A continuance which is granted to allow a party to ascertain whether testimony is necessary for a dismissal hearing is not based upon good cause when the party requesting the continuance could have made that determination prior to the hearing by using reasonable diligence.  Good cause did not exist in this case;  therefore, the one-week continuance did not toll the running of the speedy trial time period.

### b. Inability to Stand Trial

The State urges the Court to hold that Birdwell was unable to stand trial on the days on which he filed motions, the days on which the court held hearings on those motions, and the interim periods between those events.  Article VI of the IADA discusses the effect of a defendant's inability to stand trial.  It reads:

> In determining the duration and expiration dates of the time periods provided in Articles III and IV of this agreement, the running of said time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter.

TEX.CODE CRIM.PROC.ANN. art. 51.14(VI)(a).

The determinative phrase in this section is "unable to stand trial."  This phrase was consistently and only used by federal courts to refer to a party's physical[20] or mental ability to stand trial throughout the fifteen years prior to Congress' enacting the IADA in 1970.[21]  We decline to

---

[19]Moreover, during the lengthy hearing on the dismissal motion, the State explained the entirety of Scott's involvement in the case in *three simple sentences.*  Record at 376.  The contents of that hearing are published in a transcript consisting of *40 pages.*  Record at 351-93.

[20]Physical ability refers to a defendant's physical health.  The IADA provides that a defendant's physical absence due to his escape from custody voids his IADA request.  TEX.CODE CRIM.PRO.ANN. art. 51.14(III)(f).  A defendant's escape would therefore terminate his speedy trial rights under article III of the IADA.

[21]*See e.g. Collins v. Walker,* 335 F.2d 417, 429 (5th Cir.), *cert. denied,* 379 U.S. 901, 85 S.Ct. 189, 13 L.Ed.2d 175 (1964) (mental incompetence);  *Arensman v. Brown,* 430 F.2d 190, 192 (7th Cir.1970) (mental incompetence);  *Miller v. Blalock,* 411 F.2d 548, 449 (4th Cir.1969) (mental incompetence);  *Arizona v. Hunt,* 408 F.2d 1086, 1089 (6th Cir.), *cert. denied,* 396 U.S. 845, 90 S.Ct. 81, 24 L.Ed.2d 95 (1969) (mental and physical inability);  *United States v. Yeager,* 402 F.2d 918, 919 (3d Cir.1968) (mental incompetence);  *United States v. Knohl,* 379 F.2d 427, 432 (2d Cir.), *cert. denied,* 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967) (physical inability);  *Cameron v. Mullen,* 387 F.2d 193, 198 (D.C.Cir.1967) (mental incompetence);  *Evans v. United States,* 346 F.2d 512, 514 (8th Cir.), *cert. denied,* 382 U.S. 881, 86 S.Ct. 170, 15 L.Ed.2d 121 (1965) (mental incompetence);  *Powers v. United States,* 305 F.2d 157 (10th Cir.1962) (mental incompetence);  *United States v. Shapiro,* 222 F.2d 836, 837 (7th Cir.1955) (physical inability).

expand that phrase to encompass legal inability due to the filing of motions or requests.[22] There is no contention that Birdwell was unable to stand trial because of mental incompetence or physical inability. The "unable to stand trial" tolling provision is inapplicable in this case.

### III. *Conclusion*

The 180-day period ran wit hout interruption from May 19, 1986, the day the prosecutor received Birdwell's IADA request, until November 15, 1986. However, Birdwell's trial did not begin until December 2, 1986—197 days after he had properly activated the IADA speedy trial provision. The IADA plainly states that the consequence of a failure to comply with the speedy trial requirement is dismissal of the indictment with prejudice. The district court therefore granted Birdwell's application for writ of habeas corpus, vacating his Texas conviction. We affirm.

AFFIRMED.

---

[22]Indeed, if a State objects or is unprepared to respond to a defense motion, the trial court, *sua sponte* or upon the motion of the prosecution, could grant a reasonable or necessary continuance so that it could adequately review and rule upon the motion or so that the State could prepare a response. Clearly, if good cause exists—*e.g.* if the State's unpreparedness is not due a lack of diligence—and the defendant or his counsel is present, the continuance granted will toll the 180-day period.

However, a blanket rule that allows periods between motions and rulings thereon to render defendants unable to stand trial under Article VI might encourage abuse. Prosecutors might be tempted to delay preparing a response for invalid reasons, knowing that that delay, though unreasonable and unnecessary, will not count in the IADA speedy trial computation. Such a rule might also encourage trial courts to delay ruling upon motions because of heavy dockets. We conclude, therefore, that when a State or trial court legitimately needs time to respond to or rule upon a defense motion, the trial court should grant a reasonable or necessary continuance, consistent with the Article III(a) requirements.