**Donald Allen NOBLE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–96–00760–CR.**

Court of Appeals of Texas,
San Antonio.

Aug. 13, 1997.

Eugene D. Stewart, Knickerbocker, Heredia, Jasso, Dovalina & Stewart, Eagle Pass, for Appellant.

Roberto Serna, Robert Lee Little, District Attorney's Office, Eagle Pass, for Appellee.

Before RICKHOFF, LOPEZ and ANGELINI, JJ.

ANGELINI, Justice.

Donald Allen Noble appeals a conviction for felony escape. In three points of error, he contends that the trial court erred in denying his motion to quash the indictment because the indictment was fatally defective and because he was detained in violation of the Interstate Agreement on Detainers. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant was convicted of murder in the State of Utah and began serving his sentence in the Utah prison system. In 1995, he was brought to Texas and confined in the Crystal City Detention Center in Zavala County. Appellant escaped from the Crystal City facility only to be apprehended and again placed in the custody of Zavala County officials in Crystal City. He was subsequently indicted for felony escape, to which he pled

guilty. The trial court sentenced him to five years confinement, to run concurrently with his sentence on the Utah murder conviction. The court also ordered that appellant be transported back to Utah to serve the remainder of his sentences.

## ARGUMENTS AND AUTHORITIES

■ In his first and second points of error, appellant contends that the trial court erred in denying his motion to quash the escape indictment against him. In his first point of error, he alleges that the indictment was fatally defective because it failed to allege that he was convicted of an "offense" under the laws of the State of Texas. Appellant's argument lacks merit both on its face and as applied.

A person commits the offense of felony escape if he escapes from custody when he is under arrest for, charged with, or convicted of a felony offense; or is confined in a secure correctional facility. TEX. PENAL CODE ANN. § 38.06(c) (Vernon 1994); *McWilliams v. State,* 782 S.W.2d 871, 874 (Tex.Crim.App. 1990). The indictment in the present case provides that appellant, "after being convicted in the State of Utah of an offense, to-wit: Criminal Homicide, Murder in the Second Degree Felony," escaped from a secure correctional facility. Appellant contends that because the indictment alleges, as the underlying charge, a Utah offense and not a Texas offense, it effectively fails to allege an offense under Texas law as required by the Texas Penal Code.

■ Section 38.06(c) of the penal code requires that the underlying offense be a "felony." A felony, as defined by the Texas Penal Code, is an offense "so designated by law or punishable by death or confinement in a penitentiary." TEX. PENAL CODE ANN. § 1.07(a)(23) (Vernon 1994). There is no requirement under section 38.06(c) that the offense be designated a felony by Texas law or that it be punishable in a Texas penitentiary. Even if it did, the offense alleged in the indictment in this case is "Criminal Homicide, Murder in the Second Degree," which is, in fact, a felony designated by Texas law. *See* TEX. PENAL CODE ANN. §§ 19.01, 19.02 (Vernon 1994). Accordingly, the indict-

ment in this case properly alleged an offense as required by section 38.06(c).

Not only does appellant's argument fail on its merits, but its potential effect is inconceivable. We can foresee a number of circumstances in which a prisoner would be in the custody of Texas officials after having committed a crime in another jurisdiction. For example, prisoners who commit crimes in other jurisdictions may be arrested and held in Texas awaiting extradition, or, as is the case here, inmates from other states are often housed in Texas pursuant to the Interstate Corrections Compact. If we were to follow appellant's logic, those prisoners who had not committed "Texas" crimes could escape from Texas prisons and suffer no repercussions. Under appellant's reasoning, no indictment for escape could stand against any such prisoner because it would necessarily be defective. This is clearly not the result intended by the Texas legislature in passing section 38.06. Appellant's first point of error is overruled.

■ In his second point of error, appellant contends that the indictment against him was fatally defective because it failed to allege that he escaped from a secure correctional facility. Specifically, the indictment alleged that appellant escaped "from a secure correctional facility, to-wit: The Crystal City Detention Center, a Municipal Jail." Appellant contends that the Crystal City Detention Center is a private facility and is not, therefore, a secure correctional facility as a matter of law.

According to the Texas Penal Code, a secure correctional facility is either a "municipal or county jail" or "a confinement facility operated by or under a contract with any division of the Texas Department of Criminal Justice." TEX. PENAL CODE ANN. § 1.07(a)(45) (Vernon 1994). The indictment in this case alleges that the Crystal City Detention Center is a municipal jail. There is nothing in the record before us to indicate otherwise. However, even if the record indicated that the Crystal City Detention Center was a private facility, section 1.07(a)(45)(B) provides that a private facility operating under a contract with the state qualifies as a secure

correctional facility. Consequently, the Crystal City Detention Center is a secure correctional facility whether it is privately or publicly operated. Therefore, the indictment in this case properly alleged that appellant escaped from a secure correctional facility. Appellant's second point of error is overruled.

■ In his third point of error, appellant contends that the trial court erred in denying his motion to quash the indictment because the state violated the Interstate Agreement on Detainers Act (IADA). *See* TEX. CODE CRIM. PROC. art. 51.14 (Vernon 1979). The IADA is a congressionally sanctioned compact between the United States and the states. *Morganfield v. State*, 919 S.W.2d 731, 733 (Tex.App.—San Antonio 1996, no pet.). "The purpose of the IADA is to provide for the speedy disposition of charges filed in one jurisdiction against prisoners who are serving sentences in another jurisdiction." *Id.* (quoting *Birdwell v. Skeen*, 983 F.2d 1332, 1335 (5th Cir.1993)).

Article IV of the IADA provides for a prisoner being held in one state to be made available in another state where there is an indictment pending against him. TEX. CODE CRIM. PROC. art. 51.14, IV (Vernon 1979). The statute reads, in pertinent part, as follows:

(a) The appropriate officer of the jurisdiction in which an untried indictment, information, or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with Paragraph (a) of Article V hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated . . . .

(c) In respect of any proceeding made possible by this article, trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

*Id.* If the trial is not commenced within 120 days of the transfer, "the indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice." TEX. CODE CRIM. PROC. art. 51.14, IV(e) (Vernon 1979); *see Morganfield*, 919 S.W.2d at 735.

Appellant argues that, following his apprehension, he was jailed in Zavala County, Texas, for approximately eight months before he was brought forward on the indictment. He, therefore, contends that the 120 day provision of the IADA was violated, and that, accordingly, the indictment should be dismissed. There is, however, nothing in the record to indicate that appellant was in Texas by the authority of the IADA.

The record before us indicates that appellant was returned to the facility from which he escaped and that it was there that he awaited trial. There is no indication that Texas officials presented a request to Utah officials for temporary custody of appellant pursuant to the IADA. Accordingly, the plea proceeding in this case was not a "proceeding made possible by [the IADA]." *See* TEX. CODE CRIM. PROC. art. 51.14, IV(c) (Vernon 1979). Appellant is, therefore, not entitled to the protections of the IADA. *See Burton v. State*, 805 S.W.2d 564, 575 (Tex.App.—Dallas 1991, pet. ref'd)(holding 120 day provision of IADA could not serve as basis for relief for defendant who was not returned to Texas under the IADA). Appellant's third point of error is overruled.

The judgment of the trial court is affirmed.