Opinion issued May 7, 2019



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NOS. 01-18-00046-CR & 01-18-00047-CR

—————————————

## DOMINIQUE DONTAE LASKER, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 506th Judicial District**
**Waller County, Texas**
**Trial Court Case Nos. 11-01-13704 & 11-01-13705**

---

# OPINION

Appellant Dominique Dontae Lasker appeals his two convictions for murder. In two points of error, appellant contends that the trial court erred in denying his motion to dismiss his cases because the State failed to bring him to trial within (1)

180 days after he triggered Article III of the Interstate Agreement on Detainers Act ("IADA" or "the Act") and (2) 120 days after he was received in Waller County as required by Article IV of the IADA. Because the trial court erred in denying appellant's motion to dismiss, we reverse the trial court's judgments and remand the causes to the trial court with instructions to dismiss the indictments with prejudice.

## Background

On January 27, 2011, appellant was indicted by a Waller County grand jury for capital murder (for two murders committed during the same criminal transaction) and two counts of murder alleged to have been committed on March 11, 2010. At the time of the indictments, appellant was in the custody of federal correctional authorities in the Southern District of California, charged with "armed bank robbery and aiding and abetting" (Count 1) and "use and carrying of a firearm during the commission of a crime of violence, aiding and abetting" (Count 2).

Appellant pleaded guilty to both federal counts and, on December 16, 2011, he was convicted and sentenced to 37 months on Count 1 and 84 months on Count 2, with the sentences to run consecutively, for a total sentence of 121 months. Following his convictions, appellant was incarcerated at the Federal Correctional Complex in Victorville, California.

Waller County subsequently filed detainers[1] against appellant. In July 2012, appellant submitted his first request for final disposition of the Waller County indictments to the Waller County District Clerk and Waller County Criminal District Attorney ("first request"). The request included documents entitled "Notice and Demand to District Attorney/Prosecutor for Trial or Disposition of Warrants, Informations, Detainers, or Indictments by Federal Prisoner" and "Notice of Place of Imprisonment and Request for Speedy Trial and Final Disposition." The Waller County District Attorney's Office received appellant's request on July 19, 2012. On December 13, 2012, appellant filed a pro se motion to dismiss the Waller County indictments against him for violation of the IADA.

On January 2, 2013, the State of Texas requested temporary custody of appellant from the federal prison authorities in California. Federal authorities acknowledged receipt of the State's request on January 31, 2013.

It is undisputed that, on February 8, 2013, the Waller County Criminal District Attorney's Office received appellant's second request for final disposition of the indictments, this time sent by the federal correctional complex warden via registered

---

[1]  "A detainer is a request by a criminal justice agency that is filed with the institution in which a prisoner is incarcerated, asking that the prisoner be held for the agency, or that the agency be advised when the prisoner's release is imminent." *Fex v. Michigan*, 507 U.S. 43, 44 (1993); *State v. Votta*, 299 S.W.3d 130, 135 (Tex. Crim. App. 2009).

mail, return receipt requested ("second request"). The second request included documents entitled "IAD—Placement of Imprisonment," "IAD—Certificate of Inmate Status," and "IAD—Offer to Deliver Temporary Custody." On April 10, 2013, appellant filed a second pro se motion to dismiss the indictments against him for violation of the IADA.

Appellant was returned to Waller County on May 24, 2013. On June 4, 2013, appellant first appeared in Waller County district court and the trial court appointed counsel to represent him. At the conclusion of the hearing, the case was not reset. The court merely instructed that appellant be returned to custody. That same day, the trial court signed an order appointing the Regional Public Defender for Capital Cases to represent appellant. Two days later, the trial court appointed Frank Blazek to represent appellant.

On August 30, 2013, the State filed its first motion for continuance. In its motion, the State indicated its intent seek the death penalty.

On September 9, 2013, appellant filed his third motion to dismiss the indictments, contending that the cases should be dismissed under the IADA and his federal constitutional right to a speedy trial. That same day, the trial court heard appellant's motion to dismiss and the State's motion for continuance. At the conclusion of the hearing, the trial court granted the State's motion:

> Well, I think I owe it to you for clarity right now to give you the grounds
> that as a preliminary ruling. I am using Article 4 of IADA to grant the

State's Request for the Continuance because I do find good grounds. And that good grounds being the delay in getting Mr. Lasker back here; the seriousness of the charges against him; the availability of him being provided adequate and proper counsel; the complexity that has been represented to me of this case. And for all those reasons and there may well be further reasons upon study of this, I do find we have the good grounds that would be found under Article 4 for the Continuance.

The trial court stated that it would take appellant's motion to dismiss under advisement. Later that day, the trial court signed a scheduling order setting November 4, 2013 to hear motions and pleas and a jury trial on February 24, 2014.

On October 30, 2013, appellant filed his first amended motion to dismiss. In the motion, appellant cited both his initial Article III request received on July 19, 2012, and his second Article III request received on February 8, 2013, asserting that 180 days had passed since receipt of both requests. Appellant also argued that he had not sought any delay in the cases, and that the trial court had not found that good cause existed for any delay prior to the expiration of 180 days.

At the November 4, 2013 hearing, the parties discussed the filing of appellant's first amended motion to dismiss, agreed to submit factual stipulations to the trial court, and discussed the scheduling of pretrial matters. Following the hearing, the trial court entered a new scheduling order setting pretrial hearings but leaving the February 24, 2014 jury trial setting in place.

At a hearing held on February 11, 2014, the parties argued appellant's first amended motion to dismiss and agreed to numerous stipulations regarding the facts

and timeline of events relevant to appellant's motion. The hearing concluded and the February 24, 2014 jury trial setting remained in place.

Trial did not occur on February 24, 2014. On April 4, 2014, the trial court issued a new scheduling order setting the case for a preferential jury trial setting on March 30, 2015.

On July 2, 2014, the trial court signed an order denying appellant's motion to dismiss for violations of the IADA with the handwritten notation "although ruled on March 11, 2014." On July 11, 2014, appellant's trial counsel sent a letter to the trial court, with a copy to the State, forwarding appellant's motion to dismiss. The letter and motion stated that appellant was seeking dismissal of the indictments against him based on violations of both the 120-day and 180-day periods under the IADA. On July 15, 2014, the trial court signed an order denying appellant's motion to dismiss.

Trial did not occur on March 30, 2015. The case was reset three more times over the next two and a half years. The record does not reflect that either party filed a continuance prior to any of those settings.

On May 16, 2017, the State filed its first trial motion for continuance. The trial court granted the State's motion for continuance and reset the trial to October 2, 2017.

6

On October 2, 2017, appellant pleaded guilty to the two murder charges. Pursuant to a plea agreement with the State, appellant was sentenced to forty-five years' confinement, to run concurrently with his federal sentence. The trial court granted appellant the right to appeal the denial of his IADA motions to dismiss.

## Discussion

In his first point of error, appellant contends that the trial court erred in denying his motion to dismiss for violation of the IADA because the State failed to bring him to trial within 180 days after he triggered Article III of the Act. In his second point of error, appellant argues that the trial court erred in denying his motion to dismiss because the State failed to bring him to trial within 120 days after he was received in Waller County as required by Article IV of the Act.

### A. Standard of Review

We review de novo a trial court's ruling on a motion to dismiss pursuant to the IADA and the question as to whether there has been compliance with the Act's requirements. *See Arthur Alexander Office v. State*, 563 S.W.3d 457, 463 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd); *Kirvin v. State*, 394 S.W.3d 550, 555 (Tex. App.—Dallas 2011, no pet.). Any factual findings underlying that decision are reviewed under a clearly erroneous standard. *Walker v. State*, 201 S.W.3d 841, 845 (Tex. App.—Waco 2006, pet. ref'd); *State v. Miles*, 101 S.W.3d 180, 183 (Tex. App.—Dallas 2003, no pet.).

7

**B. Interstate Agreement on Detainers Act**

The IADA is a congressionally sanctioned compact between the United States and the states that have adopted it. *See Alabama v. Bozeman*, 533 U.S. 146, 148 (2001); *State v. Chestnut*, 424 S.W.3d 213, 214 (Tex. App.—Texarkana 2014, no pet.). It "outlines the cooperative procedure between the states to be used when one state is seeking to try a prisoner who is currently imprisoned in a penal or correctional institution of another state."[2] *State v. Votta*, 299 S.W.3d 130, 134–35 (Tex. Crim. App. 2009). Texas is a party to the IADA and has codified the IADA's provisions in the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 51.14; *Votta*, 299 S.W.3d at 134–35.

The IADA's purpose is to "encourage the expeditious and orderly disposition of [outstanding] charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints," based on the rationale that such charges and detainers "produce uncertainties which obstruct programs of prisoner treatment and rehabilitation." TEX. CODE CRIM. PROC. art. 51.14, art. I. Article IX mandates that the IADA "shall be liberally construed so as to effectuate its purposes." *Id.* art. IX.

---

[2] "State" as used in the IADA includes the United States. *See* TEX. CODE CRIM. PROC. ANN. art. 51.14, art. II(a); 18 U.S.C. App. 2, § 2 (enacting IADA).

Under the IADA, the prosecuting authority seeking to try an individual who is incarcerated in another state's institution must file a detainer with the institution in the state where the individual is being held. *See id.* art. III(a); *Votta*, 299 S.W.3d at 135. Once the detainer is filed, the warden or other official who has custody of the prisoner must promptly inform the prisoner that a detainer has been filed against him and that he has the right to request a final disposition of the pending charges upon which the detainer is based. TEX. CODE CRIM. PROC. art. 51.14, art. III(c); *Votta*, 299 S.W.3d at 135. The IADA's central provisions are Articles III and IV. *In re Dacus*, 337 S.W.3d 501, 504 (Tex. App.—Fort Worth 2011, no pet.).

### 1. Article III

Article III provides the procedure for a prisoner in one state to request a speedy or "final" disposition of the charges underlying the detainer lodged by another state. *See id.* at 504–05 (citing TEX. CODE CRIM. PROC. art. 51.14, art. III). To invoke the IADA, the prisoner must "cause[] to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition" of the charges against him. TEX. CODE CRIM. PROC. art. 51.14, art. III(a), (b); *Votta*, 299 S.W.3d at 135. The defendant's written notice and request for final disposition must be accompanied by a certificate from the custodial official stating (1) the defendant's term of commitment, (2) the time already served, (3) the time remaining to be served,

9

(4) the amount of good time earned, (5) the date of parole eligibility, and (6) any decision of the parole agency regarding the defendant. TEX. CODE CRIM. PROC. art. 51.14, art. III(a); *Votta*, 299 S.W.3d at 135.

A prisoner may comply with the statutory requirements by either (1) delivering his IADA request to the warden where he is imprisoned to be forwarded with the required certificate to the court and prosecuting attorney of the state which lodged the detainer against him, by regular mail or certified mail, return receipt requested,[3] or (2) delivering his request directly to the court and the prosecuting attorney of that state. *Arthur Alexander*, 563 S.W.3d at 463; *Walker*, 201 S.W.3d at 846; *see* TEX. CODE CRIM. PROC. art. 51.14, art. III(b). When a prisoner delivers the request for disposition to the warden where he is incarcerated for the purpose of forwarding it to the State that issued the detainer, "then the prisoner's 'only obligation [i]s to show that he notified the appropriate [prison] officials of his desire to [be transferred].'" *Arthur Alexander*, 563 S.W.3d at 463 (quoting *Walker*, 201 S.W.3d at 846) (internal quotations omitted). "Conversely, if the prisoner decides to deliver his transfer request directly to the court and prosecuting attorney of the other state, he is personally responsible to see that the notice is sent by registered or certified mail, return receipt requested, to those authorities." *Id.* (quoting *Walker*,

---

[3] The requirement for registered or certified mail provides documentary evidence of the date on which the request is delivered to the prosecuting officer. *See Fex*, 507 U.S. at 51.

201 S.W.3d at 846). The IADA specifically places the duty of notifying the appropriate prosecuting officer and court on a defendant. *Lindley v. State*, 33 S.W.3d 926, 930 (Tex. App.—Amarillo 2000, pet. ref'd). If the prisoner complies with all the requirements of article 51.14, he must be brought to trial in the state where charges are pending "within 180 days from the date on which the prosecuting officer and the appropriate court receive" the written request, provided that for good cause the court may grant any reasonable or necessary continuance. *Votta*, 299 S.W.3d at 135 (citing TEX. CODE CRIM. PROC. art. 51.14, art. III(a)).

## 2. Article IV

Article IV provides the procedure for a prosecutor in a state to request temporary custody of a prisoner in another state for disposition of the pending charges in his state. *See* TEX. CODE CRIM. PROC. art. 51.14, art. IV(a). Article IV(c) states that "trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state, but for good cause shown . . . the court having jurisdiction of the matter may grant any necessary or reasonable continuance." *Id.* art. IV(c). The penalty for failing to meet the deadlines of the IADA is severe. If a case is not brought to trial within the applicable Article III or Article IV time period, the court where the indictment is pending "shall enter an order dismissing the same with prejudice . . . ." *Id.* art. 51.14, art. V(c); *see State v. Williams*, 938 S.W.2d 456, 459

(Tex. Crim. App. 1997) (stating IADA "requires a dismissal of the prosecution from the docket, with prejudice, if the Act's time limits are not met").

## C. Dismissal Under Article III

Appellant contends that the trial court erred in denying his motion to dismiss for violation of the IADA because the State failed to bring him to trial within 180 days after he properly triggered Article III. Appellant asserts that while his first Article III request was possibly ineffective, his second request to invoke its provisions was successful. The State argues that both of appellant's requests failed to strictly comply with Article III. It further asserts that, even if appellant complied, the trial court continued the case for good cause, thereby tolling the 180-day period under Article III.

### 1. Appellant's First Request

The record reflects that appellant sent a request for final disposition of the indictments against him to the Waller County district clerk and the Waller County district attorney in July 2012. His request included two documents—"Notice and Demand to District Attorney/Prosecutor for Trial or Disposition of Warrants, Informations, Detainers, or Indictments by Federal Prisoner" and "Notice of Place of Imprisonment and Request for Speedy Trial and Final Disposition." The documents were filed with the Waller County district clerk's office on July 16, 2012, and the Waller County district attorney's office received them on July 19, 2012.

12

When appellant directly notified Waller County officials of his request for a final disposition, he assumed responsibility to ensure that the request included the proper information and was sent properly. *See Walker*, 201 S.W.3d at 846 ("[I]f the prisoner decides to deliver his transfer request directly to the court and prosecuting attorney of the other state, he is personally responsible to see that the notice is sent by registered or certified mail, return receipt requested, to those authorities."). The State asserts—and appellant does not dispute—that appellant's July 2012 request (1) was not forwarded to the Waller County district attorney and Waller County district court through the federal prison warden or other custodial official, (2) did not include a certificate from the federal prison official who had custody of appellant, and (3) was not sent by registered or certified mail, return receipt requested. *See* TEX. CODE CRIM. PROC. art. 51.14, art. III(b). Because his first request failed to comply with the requirements of the IADA, appellant did not trigger the 180-day period under Article III. *See Huff v. State*, 467 S.W.3d 11, 25–26 (Tex. App.—San Antonio 2015, pet. ref'd) (concluding trial court properly denied motion to dismiss because defendant did not comply with IADA requirements when he failed to send his request by registered or certified mail, return receipt requested, or include certificate with required information, so that 180-day deadline never began); *State v. Garcia*, 361 S.W.3d 244, 246 (Tex. App.—Amarillo 2012, no pet.) (reversing order dismissing indictments because defendant did not comply with IADA requirements

13

when he failed to provide certificate and required information so that "the 180 day timeline remain[ed] dormant").

### 2. Appellant's Second Request

Appellant contends that his second request for final disposition of the Waller County indictments complied with the IADA and, therefore, the State was required to bring him to trial within 180 days of its receipt of his second request, i.e., by August 7, 2013.

The record reflects that appellant sent this Article III request for final disposition through the warden of the federal correctional facility in which he was incarcerated and by registered mail, return receipt requested. There is no dispute that this request, which included forms entitled "IAD – Placement of Imprisonment," "IAD – Certificate of Inmate Status," and "IAD – Offer to Deliver Temporary Custody," was received by the Waller County district attorney on February 8, 2013. The certificate of inmate status included the term of appellant's federal sentence ("121 months"), the time he had already served as of the filling out of the certificate ("1 year 3 months 4 days"), the time remaining to be served ("6 years 6 months 15 days"), the amount of good time earned ("108"), and the maximum expiration date under the sentence ("11-29-2020").

The State acknowledges that appellant's second request properly included all relevant documentation, including a certificate from the appropriate custodial

14

official, and that it was sent by registered mail, return receipt requested. It nevertheless argues that appellant failed to strictly comply with Article III because the certificate did not include the date of appellant's parole eligibility and any decisions of the United States Parole Commission relating to appellant. Although it accepts appellant's contention that he is not eligible for federal parole,[4] the State argues that "it cannot be presumed to know [f]ederal parole law" and that "the forms could have included a simple 'n/a'" instead of being left blank.

Appellant's second Article III request was forwarded to the Waller County district attorney through the warden of the federal correctional facility where appellant was incarcerated. It was the federal correctional authorities, not appellant, who filled out the certificate of inmate status. Federal courts have recognized that "strict compliance" with Article III is not necessarily required when the prisoner forwards his Article III request through the appropriate custodial authorities. *See, e.g.*, *Norton v. Parke*, 892 F.2d 476, 481 (6th Cir. 1989), *cert. denied*, 494 U.S. 1060 (1990) (recognizing exception to rule requiring strict compliance with IADA where prisoner has done everything possible to comply with IADA and custodial state is responsible for prisoner's default); *Casper v. Ryan*, 822 F.2d 1283, 1293 (3rd Cir.

---

[4] With exceptions not relevant here, the Sentencing Reform Act of 1984 abolished federal parole for persons convicted under federal law after November 1, 1987. *Lightsey v. Kastner*, 846 F.2d 329, 331–32 (5th Cir. 1988). Appellant was convicted of the federal charges in 2011.

1987), *cert. denied*, 484 U.S. 1012 (1988) ("Strict compliance with Article III may not be required when the prisoner has done everything possible, and it is the custodial state that is responsible for the default."); *see also Lara v. Johnson*, 141 F.3d 239, 243 (5th Cir. 1998) ("[W]e are not implying or stating that nothing short of strict and literal compliance with each and every IAD provision is absolutely necessary to sufficiently notify a state's prosecutors of a request for trial.").

Several Texas courts have reached a similar conclusion. In *Walker v. State*, the Waco Court of Appeals held that the defendant had successfully invoked Article III by forwarding his request to the warden of the facility in which he was being held, explaining that "[i]f the prisoner delivers the transfer request to the warden where he is incarcerated for forwarding, then the prisoner's 'only obligation [i]s to show that he notified the appropriate [prison] officials of his desire to [be transferred].'" 201 S.W.3d at 846 (quoting *Burton v. State*, 805 S.W.2d 564, 575 (Tex. App.—Dallas 1991, pet. ref'd)). In *State v. Chestnut*, the Texarkana Court of Appeals concluded that a federal prisoner who was incarcerated in Oregon at the time of his indictment in Texas had complied with the requirements of the IADA, despite the fact that the warden of the Oregon prison had failed to ensure that the request for final disposition was received by the court. 424 S.W.3d at 215–17. The court held that the defendant had "met his only obligation under Article III" when he delivered his IADA request to the warden in proper form. *See id*. at 217.

Here, it is undisputed that appellant delivered his second Article III request to the appropriate federal correctional authorities in proper form. Accordingly, appellant met his only obligation under Article III of the IADA. *See Chestnut*, 424 S.W.3d at 217; *Walker*, 201 S.W.3d at 846.

The State contends that appellant's request for dismissal under Article III was properly denied for another reason. It argues that the trial court granted two continuances—one on June 4, 2013 and a second one on September 9, 2013—and these continuances tolled the 180-day period under Article III.

The record reflects that appellant first appeared in court on June 4, 2013. At the hearing, the trial court told appellant "what we are here to do today is primarily make sure that you have representation." The trial court then informed appellant that he would be assigned a two-person capital defense team from the Regional Capital Defender's Project. The trial court signed an order appointing counsel the same day.

It is the State's position that the trial court, at appellant's request, reset the case at the June 4, 2013 hearing so that appellant could be appointed counsel to represent him. The State asserts that "[a] court has no real choice but to grant a reasonable and necessary continuance as part and parcel of appointing counsel, per the Defendant's request, in a capital murder prosecution in which the death penalty

17

is on the table."[5] The State concludes that "[i]t appears plain that the judge granted a necessary continuance as part of this hearing" until the next hearing on September 9, 2013, thereby tolling the 180-day period until the September 9, 2013 hearing.

The IADA is a congressionally sanctioned interstate compact subject to federal construction. *See New York v. Hill*, 528 U.S. 110, 111 (2000). The Fifth Circuit's analysis in *Birdwell v. Skeen* is instructive. In that case, during a hearing on the defendant's motion to dismiss the indictment against him for violation of his right to a speedy trial, the State requested a continuance so that it could determine whether it needed the testimony of its investigator who was unavailable. *See Birdwell*, 983 F.2d 1332, 1334 (5th Cir. 1993). The district court granted a one-week continuance; however, the hearing did not reconvene until three weeks later without an explanation for the delay. *See id.*

Noting the "unique" nature of continuances under the IADA, the Fifth Circuit stated:

> The IADA sets forth five distinct requirements for obtaining such a continuance. First, the court must have competent jurisdiction. Second, the grant of the continuance must be in open court. Third, the defendant and/or his attorney must be present. Fourth, the movant must demonstrate good cause in open court, and finally, the length of the continuance must be reasonable or necessary.

---

[5] The State cites no legal authority in support of this assertion.

18

*Id.* at 1336 & n.9 ("[U]nless [a] continuance[] compl[ies] with the IADA requirements, [it] will not toll the speedy trial period."). The court held that the continuance granted by the district court lasted only for one week, and that the additional two-week unexplained delay did not meet the criteria for an additional continuance under the IADA. *See id.* at 1339. The Fifth Circuit affirmed the district court's order vacating the defendant's conviction because the State did not comply with the requirements of the IADA. *See id.* at 1341.

Here, the more than three months between the June 4, 2013 hearing and the September 9, 2013 hearing failed to comply with the IADA continuance requirements in several respects. Neither the State nor appellant asserted any motion for continuance, either written or oral, and the trial court did not grant a continuance in open court. In fact, the word "continuance" does not appear anywhere in the reporter's record of the hearing.[6] The purpose of the hearing, as the trial court advised appellant, was to ensure that appellant had representation. Once that purpose was accomplished, the trial court adjourned the hearing and signed an order that same day, and there was no finding, or even reference to, good cause for any continuance. And, contrary to the State's assertion, appellant did not request a reset

---

[6] Because neither party moved for a continuance and the trial court did not grant one, it follows that there was no demonstration of good cause in open court. *See Birdwell v. Skeen*, 983 F.2d 1332, 1336 (5th Cir. 1993) (stating third requirement of continuance under IADA is that movant must demonstrate good cause in open court).

19

but, instead, repeatedly requested that his motions to dismiss be heard. The trial court did not take up appellant's motions. *Cf. Morganfield v. State*, 919 S.W.2d 731, 735 (Tex. App.—San Antonio 1996, no pet.) (concluding that 120-day provision under Article IV was not tolled where no request for continuance from either party or any agreed resetting appeared in record).

The IADA mandates that the agreement "be liberally construed so as to effectuate its purposes." *Birdwell*, 983 F.2d at 1339 (noting purpose of IADA is "to provide for the expeditious disposition of outstanding charges against persons imprisoned in other jurisdictions"). It is clear that, under this mandate, a silent record is counted against the State. As the *Birdwell* court explained:

> If the speedy trial period could be tolled by unexplained extensions of continuances simply because the record fails to attribute them to the prosecution, the speedy trial provision would, in effect, be rendered a nullity. For a trial court could grant a one-week continuance, but not reconvene for weeks or months. And although no party had demonstrated good cause for the additional postponement in open court and in the presence of the defendant and/or his attorney, not one day of that "super-continuance" would count in the speedy trial computation. We believe that such a rule would not only render the explicit continuance requirements surplusage, but would also encourage prosecutors to obtain *ex parte* continuances and "busy district courts" to grant *sua sponte* continuances. Such clever maneuvering around the IADA provisions would thwart the purposes of the IADA and chisel away defendants' rights to a speedy trial under the agreement.

*Id.* at 1339 (emphasis in original). *See also Johnson v. Stagner*, 781 F.2d 758, 763 n.8 (9th Cir. 1986) (determining that "responsibility for undocumented continuances cannot simply be imputed to a defendant"); *Stroble v. Anderson*, 587 F.2d 830, 839–

40 (6th Cir. 1978), *cert. denied*, 440 U.S. 940 (1979) (stating that informal methods of granting continuances are inconsistent with requirements of IADA); *United States v. Ford*, 550 F.2d 732, 743 (2d Cir. 1977), *aff'd* 436 U.S. 340 (1978) (noting that defendant's "speedy trial rights may be whittled away in the non-adversary context of ex parte communications between the government and the court"). We must emphasize, again, that the IADA is "a federal law subject to federal construction." *Hill*, 528 U.S. at 111.

The 180-day period ran without interruption from February 8, 2013, the day the Waller County district attorney received appellant's second IADA request, until August 7, 2013. Because the State failed to bring appellant to trial before the 180-day period expired, we hold that the trial court erred in denying appellant's motion to dismiss for violation of Article III of the IADA. Accordingly, we sustain appellant's first point of error.[7]

---

[7]     In light of our disposition of appellant's first point of error, we need not address his second point of error contending that the trial court erred in denying his motion to dismiss for violation of Article IV of the IADA because the State failed to bring him to trial within 120 days after he was received in Waller County. *See* TEX. R. APP. P. 47.1 (stating that appellate court must address every issue raised and necessary to final disposition of appeal). Nor do we need to address the fact that the case was not resolved with a plea on a reduced charge until more than four years after appellant arrived in the state.

## Conclusion

We reverse the trial court's judgments in cause numbers 11-01-13704 and 11-01-13705 and remand the causes to the trial court with instructions to dismiss the indictments with prejudice.  *See* TEX. CODE CRIM. PROC. art. 51.14, art. V(c).


Russell Lloyd
Justice

Panel consists of Justices Lloyd, Kelly, and Hightower.

Publish.   TEX. R. APP. P. 47.2(b).