Ellis MORGANFIELD, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 04-94-00678-CR.

Court of Appeals of Texas,
San Antonio.

Feb. 28, 1996.

Jacquelyn L. Snyder, San Antonio, for Appellant.

Angela Moore, Assistant Criminal District Attorney, San Antonio, for Appellee.

Before STONE, HARDBERGER and DUNCAN, JJ.

OPINION

DUNCAN, Justice.

Appellant, Ellis Morganfield, Jr., while incarcerated in Oklahoma, was charged with sexual assault in Bexar County, Texas. Morganfield filed a motion to dismiss the charges based upon violations of articles III and IV of the Interstate Agreement on Detainers Act (IADA), which was denied. Morganfield was extradited to Texas and brought to trial on the sexual assault charge. He was convicted and sentenced to eight years confinement in the Texas Department of Criminal Justice, Institutional Division. In his first two points of error Morganfield argues that the trial court committed reversible error in denying his motion to dismiss based upon the State's violations of the IADA. We agree and therefore reverse his conviction and direct the trial court to enter an order dismissing the indictment with prejudice.

## BACKGROUND

Ellis Morganfield was charged with one count of sexual assault by a Bexar County Grand Jury on June 25, 1993. At the time, Morganfield was incarcerated in the J.H. Lilley Correctional Center in Lawton, Oklahoma. On August 17, 1993, Morganfield filled out an Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments, Informations, or Complaints pursuant to article III of the IADA. Included with this information was a Certificate of Inmate Status and an Offer to Deliver Temporary Custody, both with the warden's name typed in. On September 8, 1993, Judge Terry McDonald and Assistant District Attorney W. Howard signed, pursuant to article IV of the IADA, a Request for Temporary Custody of Ellis Morganfield, addressed to the warden of the J.H. Lilley Correctional Center. On October 13, 1993, Oklahoma Assistant Attorney General Wellon Poe informed the Governor of Oklahoma that Bexar County requested temporary custody of Morganfield pursuant to the IADA, and that the governor had thirty days in which to disapprove the request. On March 16, 1994, Morganfield was brought to Bexar County to stand trial.

The IADA is a congressionally sanctioned compact between the United States and the states. "The purpose of the IADA is to provide for the speedy disposition of charges filed in one jurisdiction against prisoners who are serving sentences in another jurisdiction." *Birdwell v. Skeen,* 983 F.2d 1332, 1335 (5th Cir.1993). Alleged violations of articles III and IV of the IADA form the basis of Morganfield's demand for dismissal of the Bexar County indictment. In response, the State argues that there is no evidence in the record to show that Morganfield was brought to Texas pursuant to the IADA and, even if he was, Morganfield agreed to twice delay his trial setting. The record does not support the State's argument.

## VIOLATION OF IADA 180–DAY PROVISION

Morganfield argues in his first point of error that the trial court erred in denying his motion to dismiss based upon a violation of article III of the IADA. Article III provides:

(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, *he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment....* The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decision of

the state parole agency relating to the prisoner.

(b) The written notice and request for final disposition referred to in Paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections, or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.[1]

■■■ The Supreme Court has held that the 180–day provision "does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him." *Fex v. Michigan*, 507 U.S. 43, 113 S.Ct. 1085, 1091, 122 L.Ed.2d 406 (1993). "The inmate bears the burden of demonstrating compliance with the formal procedural requirements of Article III." *U.S. v. Henson*, 945 F.2d 430, 434 (1st Cir. 1991); *see also Bryant v. State*, 819 S.W.2d 927, 930–31 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd).

■■■ There is no proof in this record as to when the trial court and the prosecuting attorney received the request for final disposition of the charges, nor is there proof that they were even mailed. We therefore do not know when the 180–day provision was triggered. Our record begins with Morganfield's motion to dismiss filed on March 14, 1994.[2] Morganfield has failed to meet his burden. Accordingly, his first point of error is overruled.

### VIOLATION OF IADA 120–DAY PROVISION

In his second point of error, Morganfield argues that the trial court erred in denying his motion to dismiss based on a violation of article IV of the IADA. Article IV provides:

(a) The appropriate officer of the jurisdiction in which an untried indictment, information, or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with Paragraph (a) of Article V hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated. . . .

(c) In respect of any proceeding made possible by this article, *trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state,* but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

■■■ The State first argues that the record shows that Morganfield was paroled from Oklahoma, and his status in this State is permanent; therefore, the State argues, he is not subject to the IADA. This assertion is not supported by the record. The following exchanges occurred between the trial judge and the prosecutor during pretrial and punishment phases of the trial.

[By the State]: And, Your Honor, just for the record, I would say that is the same judge that has been following this case since Mr. Morganfield has been extradited over here.[3]

. . . .

[By the Witness]: We did contact Comanche County [Oklahoma] by telephone during the extradition process on Mr. Morganfield, . . . .[4]

. . . .

[By the Court]: Where was he extradited from?

---

**1.** All statutory references are to TEX.CODE CRIM. PROC.ANN. art. 51.14 (Vernon 1979).

**2.** Attached to the motion to dismiss are the letter from the Oklahoma Attorney General to the Governor of Oklahoma informing him of Bexar County's request for temporary custody, a Request for Temporary Custody, an Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments, Informations or Complaints, a Certificate of Inmate Status, and an Offer to Deliver Temporary Custody.

**3.** S.F. II/11.

**4.** S.F. V/14–15.

[By the State]: Comanche County.

[By the Court]: Was he extradited from the Oklahoma penitentiary or was he extradited from the county jail of Comanche County; do you know?

[By the State]: He was incarcerated at John Lilley Correctional Center.[5]

. . . .

[By the Court]: ... I am going to order him returned to Oklahoma, or wherever he came from, to finish his sentence out there.

I am going to run the sentence that he's got. I'm going to commence the sentence from the first day the detainer was placed on him. . . .[6]

Based on the foregoing exchange, we conclude that Morganfield was extradited to this State. The triggering date for the 120–day provision was therefore March 16, 1994, the date Morganfield was booked into the Bexar County Jail, and the State was required to bring Morganfield to trial by July 14, 1994. Trial, however, did not begin until September 21, 1994—189 days after Morganfield was brought to this State. Accordingly, Morganfield has proven a violation of article IV of the IADA unless the 120–day provision was tolled.

### TOLLING

The State makes no tolling argument with respect to Morganfield's second point of error. However, in response to Morganfield's first point of error, the State argues that the 180–day provision should be tolled because there were resets in the case and because Morganfield at times proceeded pro se and at other times was represented by counsel. We did not reach this argument in our analysis of Morganfield's first point of error because Morganfield failed to prove the date the 180–day provision commenced. We do so now, however, because the tolling provision in article III mirrors that in article IV.[7]

5. S.F. V/18.

6. S.F. V/65.

7. Article III(a) provides:

Article IV(c) sets forth five requirements for obtaining a continuance. First, the court must have competent jurisdiction. Second, the continuance must be granted in open court. Third, the defendant or his attorney must be present. Fourth, the movant must demonstrate good cause. Finally, the length of the continuance must be reasonable or necessary. This court has reviewed the record, and we can find no request for a continuance from either party. Nor do any agreed resettings appear in the record. *See Petrick v. State,* 832 S.W.2d 767, 771–72 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) (case was reset 17 times and the agreed setting forms contained the signatures of both the prosecutor and the defense attorney). Because there was no motion for continuance and no agreed resetting, the 120–day provision was not tolled.

### CONCLUSION

The 120–day provision ran from March 16, 1994, the day Morganfield was booked into the Bexar County Jail. His trial began, however, 69 days after the expiration of the 120–day provision. The IADA states the consequences for failure to comply with its provisions: the indictment "shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice." TEX.CODE CRIM.PROC.ANN. art. 51.14 (Vernon 1979). We therefore have no choice but to reverse and remand this cause to the trial court with instructions to dismiss the indictment with prejudice. *See Birdwell,* 983 F.2d at 1341.

... provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.
TEX.CODE CRIM.PROC.ANN. art. 51.14 (Vernon 1979).