Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued February 12, 2004          Decided July 2, 2004

No. 03-3037

UNITED STATES OF AMERICA,
APPELLEE

v.

LYDELL ELLERBE,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 00cr00352–01)

———

*Dennis M. Hart*, appointed by the court, argued the cause for the appellant.

*Valinda Jones*, Assistant United States Attorney, argued the cause for the appellee. *Roscoe C. Howard, Jr.*, United States Attorney, and *John R. Fisher*, *Roy W. McLeese III* and *Thomas C. Taylor*, Assistant United States Attorneys, were on brief.

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: EDWARDS, HENDERSON and ROBERTS, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LeCRAFT HENDERSON, *Circuit Judge*: Appellant Lydell Ellerbe appeals his conviction of six counts of unlawfully distributing narcotics and transporting firearms and his sentence therefor. Ellerbe contends the trial court deprived him of his right to legal representation under the Sixth Amendment of the United States Constitution and his speedy trial right under the Interstate Agreement on Detainers (IAD). We reject his IAD argument *in toto* and his Sixth Amendment objection insofar as it relates to his trial and conviction. We agree, however, that the trial court denied him his right to counsel at sentencing and therefore remand for the court to offer Ellerbe the option to be resentenced with assistance of counsel.

## I.

During 2000 Ellerbe was videotaped selling undercover police officers the following contraband items: ten assorted firearms on April 10, a shotgun, two handguns and ten dilaudid[1] tablets on May 5, fifteen boxes of shotgun shells and ten dilaudid tablets on June 26, fifty dialudid tablets on July 19 and five-hundred dilaudid tablets on August 7. Based on these transactions, on October 19, 2000, Ellerbe was indicted on two counts of interstate transportation of firearms in violation of 18 U.S.C. § 922(a)(1)(A) (counts one and two), four counts of unlawful distribution of dilaudid in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (counts three, five, six and seven) and one count of using, carrying or possessing a firearm during the commission of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1) (count 4). A bench warrant issued and, because Ellerbe was then incarcerated by the Virginia Department of Corrections, was lodged as a detain-

---

[1] Dilaudid is a brand-name prescription painkiller containing hydromorphone, a Schedule II controlled substance under 21 U.S.C. § 812. *See* 21 C.F.R. § 1308.12(b)(1)(11). *United States v. Shabazz*, 933 F.2d 1029, 1030 (D.C. Cir. 1991).

er[2] against his release. On March 26, 2001 the United States received a request for disposition of the charges in the indictment under the IAD, to which both the Commonwealth of Virginia and the District of Columbia are signatories and which provides for a speedy trial (within 180 days of a prisoner's request for final disposition) of a prisoner incarcerated in a contracting state against whom a detainer has been lodged based on an untried indictment in another contracting state. 18 U.S.C. app. 2, § 2, art. iii. On March 22 the district court issued a writ of habeas corpus prosequendum pursuant to which Ellerbe was transported to the District of Columbia. He was provided counsel from the Office of the Public Defender which represented him at his arraignment on May 8, 2001, during which a status hearing was set for June 6, 2001.

At the June 6 hearing Ellerbe requested new counsel and the court agreed to appoint new, private counsel and to hold another status conference after the appointment. The court announced that the time lapse between then and the next status conference would be "excluded from the speedy trial calculation at [Ellerbe's] own request." 6/06/01 Tr. at 9. Ellerbe agreed to the exclusion.

At the next conference, on June 14, 2001, new appointed counsel entered an appearance on Ellerbe's behalf. The court set a trial date of July 24 and directed Ellerbe's counsel to file any pre-trial motions within two weeks. The court informed the parties it would "adjust the trial schedule to the motions." 6/14/01 Tr. at 5. On July 24, the date on which the trial had been scheduled to begin, Ellerbe complained to the court of his lawyer's "ineffective assistance" in refusing to file motions Ellerbe had requested. His counsel informed the court he could not in good conscience file the requested motions, explaining that he and Ellerbe were having commu-

---

[2] A "detainer ... is a request by the State's criminal justice agency that the institution in which the prisoner is housed hold the prisoner for the agency or notify the agency when release is imminent." *New York v. Hill*, 528 U.S. 110, 112 (2000) (citing *Fex v. Michigan*, 507 U.S. 43, 44 (1993)).

nication problems. The court then discussed with Ellerbe the motions he wished to file. During the discussion, Ellerbe revealed he had filed complaints against his lawyer with the bar associations of both Virginia and the District of Columbia. The lawyer then moved to withdraw and the court again suspended the speedy trial clock until a third lawyer could be appointed, to which Ellerbe again agreed. On July 25 the court requested a new lawyer to represent Ellerbe but she declined after Ellerbe told her he did not wish her to represent him.

On September 6, 2001 the court held a status conference to determine Ellerbe's competence both to stand trial and to represent himself. A lawyer from the Public Defender's Office was appointed, temporarily, to represent Ellerbe at the hearing. After temporary counsel reported to the court that Ellerbe felt he lacked the legal knowledge to represent himself and wished the assistance of counsel, the court advised Ellerbe that it would appoint a fourth lawyer but that the lawyer would be the last such appointment. It then ordered the case "continued until the entry of an appearance of the next—and last—attorney that Mr. Ellerbe will have." 9/6/01 Tr. at 18.

In a memorandum dated October 10, 2001 the newly appointed counsel, Edward Sussman, advised the court that he did "not see how the standard attorney-client relationship will work in this case." Gov't Rec. Mat. tab L, at 1. He therefore suggested that "the court explore having the defendant act as his own counsel with an attorney acting in an advisory capacity." *Id*. at 1-2. At a status hearing on October 12, 2001 the court appointed Sussman as Ellerbe's legal advisor and set a motions hearing for November 13, 2001. At the motions hearing, Ellerbe argued on his own behalf, with Sussman interceding sporadically. At the conclusion of the hearing Ellerbe complained that the court itself had acknowledged he was not knowledgeable enough to represent himself. The court then offered (disregarding its previous ultimatum) to appoint another lawyer to represent Ellerbe. Ellerbe emphatically turned down the offer and stated: "No matter where it takes me[,] I'll continue the way

I'm going." 11/13/2001 Tr. at 37. At a subsequent hearing on November 30, 2001, when the court expressed concern about Ellerbe's competence to represent himself, Ellerbe replied: "[Y]ou were the one who told me that I had to represent myself" but then continued: "That's the way I want it to be." 11/30/01 Tr. at 4. Uncertain of Ellerbe's competence, the court ordered him committed for psychological evaluation.

In a report filed with the district court on January 22, 2002, the government psychologists who examined Ellerbe stated he was "not viewed as suffering from a significant mental disease or defect" that would render him "not able to understand the charges, court procedures, or adequately assist with his defense provided he chooses to do so" but advised that "[b]y virtue of his limited educational opportunities, below average mental ability and moderate paranoid traits" they did "not view him as capable of conducting his own self defense." Gov't Rec. Mat. tab P, at 7. At a conference on March 7, 2002, the court agreed that Ellerbe was competent to stand trial but also concluded that "by decree of the Supreme Court" he was therefore competent to represent himself as well. 3/7/02 Tr. at 1-2. The court nonetheless "implore[d]" Ellerbe not to do so and Ellerbe relented. *Id.* at 2. He consented to be represented by Sussman with the understanding that he would listen to his counsel's advice and not revisit motions the court had already resolved. Trial was scheduled for June 18, 2002.

A few weeks later Ellerbe wrote the court complaining that Sussman would not file motions he wished filed. In response, the court conducted a motions hearing on March 28, 2002 at which Ellerbe stated he was "going to represent [him]self" with Sussman returning to the status of legal advisor. 3/28/02 Tr. at 43. The court reluctantly acceded.

At a final pre-trial hearing on April 25, 2002 the court addressed a claim, proffered by Ellerbe for the first time, that his speedy trial right under the IAD had been violated.[3]

---

[3] Although Ellerbe had previously claimed violation of his rights under the Speedy Trial Act, 18 U.S.C. § 3161, this was the first

The court found no violation because most, if not all, of the continuances "were caused by Mr. Ellerbe's own decisions about lawyers in the case." 4/25/02 Tr. at 19.

On June 19, 2002, at the conclusion of a three-day trial, the court dismissed count four of the indictment, alleging use of a firearm during a drug trafficking offense, and the jury convicted Ellerbe of the remaining six counts. Following the verdict, the court relieved Sussman of his appointment and on June 20, 2002 issued an order formally declaring that Sussman had "no duty of representation in connection with post-trial motions, sentencing, or appeal." Gov't Rec. Mat. tab T, at 2. Ellerbe represented himself at sentencing and the court, adopting the recommendations of the pre-sentence report, sentenced Ellerbe to a total term of 108 months' incarceration to be followed by three years of supervised release.[4]

## II.

We address separately the arguments Ellerbe urges on appeal.

### A. Right to Counsel

First, Ellerbe contends the district court deprived him of his Sixth Amendment right to counsel by forcing him to represent himself in the criminal proceeding. We reject this claim as it relates to the trial portion of the proceeding because Ellerbe knowingly, intelligently and voluntarily waived his right to counsel and elected to represent himself during this phase. We further conclude, however, that the district court erred in failing to ascertain whether the waiver extended beyond the trial to the sentencing phase.

time he had invoked the IAD since his initial request for final disposition on March 26, 2001.

[4] The judge sentenced Ellerbe to concurrent terms of 60 months on counts one and two and concurrent terms of 108 months on counts three, five, six and seven.

"The Sixth and Fourteenth Amendments of our Constitution guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment." *Faretta v. California*, 422 U.S. 806, 807 (1975). Concomitantly, "[t]he Sixth Amendment right to the assistance of counsel implicitly embodies a 'correlative right to dispense with a lawyer's help'" so that "'an accused, in the exercise of a free and intelligent choice, and with the considered approval of the court, may waive trial by jury, and so likewise may he competently and intelligently waive his Constitutional right to assistance of counsel.'" *Id.* at 813, 814 (quoting *Adams v. United States*, 317 U.S. 269, 279, 275 (1942)). The district court repeatedly and emphatically encouraged Ellerbe to accept the assistance of counsel but Ellerbe, with equal determination, rejected the offers of legal assistance. Although he sporadically, and unenthusiastically, accepted appointment of counsel, in each instance he quickly reversed course, expressing dissatisfaction with counsel's performance. In the end, recognizing his limited legal abilities, he accepted Sussman's assistance as standby advisory counsel while yet insisting on conducting his own defense at trial.

On appeal Ellerbe asserts that he did not knowingly waive his right to counsel because he repeatedly acknowledged his inability to defend himself—a view shared by the federal psychologists who evaluated him. The Supreme Court has expressly held, however, that a defendant who is competent to stand trial is also competent to waive his right to assistance of counsel—all that is necessary is that he do so intelligently and voluntarily. *See Godinez v. Moran*, 509 U.S. 389, 391 (1993) ("[T]he competency standard for pleading guilty or waiving the right to counsel is [not] higher than the competency standard for standing trial."); *id.* at 401-02 ("competence to waive" right to assistance of counsel is "a shorthand for the 'intelligent and competent waiver' requirement of *Johnson v. Zerbst*[, 304 U.S. 458 (1938)]"). "[T]he defendant's 'technical legal knowledge' is 'not relevant' to the determination whether he is competent to waive his right to counsel"; his "ability to represent himself has no bearing

upon his competence to *choose* self-representation." *Id*. at 400 (quoting *Faretta v. California*, 422 U.S. 806, 834 (1975) (emphasis original)). Ellerbe's dogged insistence on representing himself at trial constituted an intelligent and voluntary waiver of his right to appointed counsel at trial and we will therefore not entertain his Sixth Amendment claim on appeal. *Cf. United States v. Fazzini*, 871 F.2d 635, 641-42 (7th Cir. 1989) ("defendant who refused to cooperate with numerous appointed counsel, who was warned of the consequences that his failure to cooperate would have, and who insisted, despite his conduct, that he was not waiving his right to appointed counsel . . . knowingly and intelligently waived his right to appointed counsel"); *United States v. Moore*, 706 F.2d 538, 540 (5th Cir. 1983) ("conclud[ing] that a persistent, unreasonable demand for dismissal of counsel and appointment of new counsel . . . is the functional equivalent of a knowing and voluntary waiver of counsel").

We reach a different conclusion regarding Ellerbe's right to counsel at sentencing. A criminal defendant is " 'as much entitled to effective representation by counsel at sentencing as at any other critical stage of his trial.' " *United States v. Green*, 680 F.2d 183, 188 (D.C. Cir. 1982) (quoting *United States v. Pinkney*, 543 F.2d 908, 914 (D.C. Cir. 1976); citing American Bar Association Project on Standards for Criminal Justice, Standards Relating to Sentencing Alternatives and Procedures § 5.3(e) (1968)). The district court, however, made no effort to ascertain whether Ellerbe desired representation at sentencing. The court *sua sponte* discharged Sussman at the close of the trial and did not thereafter take any action to protect Ellerbe's Sixth Amendment right to further representation. As a consequence Ellerbe was left to negotiate the United States Sentencing Guidelines unassisted even by advisory counsel. Ellerbe also demonstrated the "likelihood of harm" needed to put the government to the burden of "disprov[ing] actual injury" from the lack of representation. *United States v. Green*, 680 F.2d at 188 (citing *United States v. Wood*, 628 F.2d 554, 561 (D.C. Cir. 1980)). In sentencing Ellerbe the district court adopted the recommendation of the pre-sentence report to increase Ellerbe's base offense level by four levels for "possessing a firearm in

connection with a drug offense," 9/5/02 Tr. at 8, pursuant to U.S.S.G. § 2K2.1(b)(5). Without benefit of legal advice, Ellerbe did not contest the increase which changed his sentencing range from 87/108 months to 108/135 months. Yet case law supports the contention, urged by Ellerbe on appeal, "that more than 'mere possession' is required to establish the possession prong" of section 2K2.1(b)(5) and that instead the enhancement for possession applies when "the firearm had some potential emboldening role in [the] defendant's felonious conduct." *United States v. Polanco*, 93 F.3d 555, 566-67 (9th Cir. 1996) (internal quotation omitted; alteration original); *see also United States v. Bowie*, 198 F.3d 905, 913 (D.C. Cir.1999) (upholding section 2K2.1 increase where defendant's "possession of the weapon emboldened him, or appeared to, and his reaching for the weapon showed his intent to use it to facilitate" felony); Gov't Br. at 49 ("Appellant correctly states that the mere possession of a firearm is not sufficient to support this adjustment.").[5] We note, however, that, if on remand Ellerbe rejects assistance of counsel, his sentence will stand as originally entered and that an appeal therefrom will bear little chance of success under the applicable "plain error" standard of review. *See United States v. Thomas*, 361 F.3d 653, 661 (D.C. Cir. 2004) (where defendant fails to raise objection to sentence in district court, "our review is limited to scrutiny for plain error under Federal Rule of Criminal Procedure 52(b)" (citing *United States v. Olano,* 507 U.S. 725, 731 (1993); *United States v. Joaquin,* 326 F.3d 1287, 1290 (D.C. Cir. 2003))).[6]

---

[5] The government argues on appeal that a section 2k2.1(b)(5) increase is justified because Ellerbe had reason to believe the purchasers would use the firearm in connection with a felony. Because the government did not use this rationale below and the sentencing judge did not rely on it, we may not uphold the increase on this basis. *See United States v. Fields*, 242 F.3d 393, 397 (D.C. Cir. 2001) (rejecting rationale on which neither sentencing judge nor pre-sentence report relied).

[6] Given the likelihood of resentencing on remand we do not reach the substance of Ellerbe's claim that the four-level increase constitutes reversible error.

### B. IAD Speedy Trial

The IAD provides in relevant part:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during . . . the term of imprisonment there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint. . . .

18 U.S.C. app. 2, § 2, art. iii(a). Ellerbe contends his speedy trial right under this provision was violated because he was not tried within 180 days after he delivered his request for final disposition on March 26, 2001. We disagree.

The IAD "is designed 'to encourage the expeditious and orderly disposition of . . . charges [outstanding against a prisoner] and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints.' " *United States v. Mauro*, 436 U.S. 340, 343 (1979) (quoting 18 U.S.C. app. 2, § 2, art. i (alteration original)). Its strictures, however, are far from absolute. The IAD's text expressly directs that the period be tolled "whenever and for as long as the prisoner is unable to stand trial," 18 U.S.C. app. 2, § 2, art. vi(a), which courts have construed to include those periods of delays caused by the defendant's own actions. *See United States v. Johnson*, 953 F.2d 1167, 1172 (9th Cir. 1992) (IAD period is tolled when delay is "excludable" under Speedy Trial Act, 18 U.S.C. § 3161, "because it is attributable to a defendant's own motions"); *United States v. Cephas*, 937 F.2d 816, 819 (2d Cir. 1991) (IAD art. vi "allows exclusions of all those periods of delay occasioned by the defendant") (internal quotations omitted); *United States v. Nesbitt*, 852 F.2d 1502, 1516 (7th Cir. 1988) ("periods

of delay occasioned by the multiple motions filed on behalf of the defendant[ ] operate to toll the running of [IAD] Articles III and IV"); *United States v. Walker*, 924 F.2d 1, 5 (1st Cir. 1991) ("Courts have consistently applied this language 'to exclude all those time periods of delay occasioned by the defendant.'" (quoting *United States v. Taylor*, 861 F.2d 316, 321 (1st Cir. 1988))). In this case the delays to which Ellerbe objects were caused by Ellerbe's own conduct—notably his penchant for frivolous motions and his erratic stance on legal representation.

On June 6, 2001 Ellerbe requested new counsel, stalling the proceedings until counsel could be appointed. When new counsel entered an appearance on June 14, 2001, the court set a trial date of July 24 and gave Ellerbe's counsel two weeks to file pre-trial motions. On July 24, 2001 Ellerbe disclosed he had filed a complaint against his second lawyer requiring appointment of yet a third lawyer, whom Ellerbe discharged shortly thereafter. All of this prompted the September 6, 2001 competency conference and Sussman's appointment. The next two months were largely consumed by the need for the newly appointed Sussman to become familiar with the case and to file pre-trial motions and by Ellerbe's changing position on legal representation (as well as his filing of yet more motions). After the November 30 hearing an additional delay of more than one month was caused by the need for the competency evaluations, which necessitated the follow-up hearing on March 7, 2002. Thereafter, more time was required for the reinstated Sussman to file motions and prepare for trial and for the court to address additional pre-trial motions filed by Ellerbe both before and after he resumed self-representation. In sum, given Ellerbe's obstructive conduct throughout the period from arraignment to trial, he cannot now complain of the many delays his conduct caused.

\* \* \*

For the foregoing reasons, Ellerbe's conviction is affirmed and his sentence is remanded with instructions to the trial

court to resentence Ellerbe with the representation of counsel should Ellerbe so elect.

*So ordered.*