Paulbert Tanard KIRVIN, Appellant

v.

The STATE of Texas, Appellee.

No. 05–09–00734–CR.

Court of Appeals of Texas, Dallas.

May 13, 2011.

---

33. 377 S.W.3d 712, 722 (Tex.Crim.App.2012).

Russ Henrichs, Dallas, for Appellant.

Karen R. Wise, Asst. Dist. Atty., Craig Watkins, Dallas, for the State of Texas.

Before Justices FITZGERALD, MURPHY, and FILLMORE.

## OPINION

Opinion By Justice FITZGERALD.

Appellant was convicted of robbery. Appellant pleaded true to the second paragraph of the indictment, and the jury assessed his punishment at twenty years' imprisonment plus a $500 fine. We affirm.

### Speedy Trial Under the IADA

In his first issue, appellant contends that, because the trial took place after the expiration of 120 calendar days, he was

denied a speedy trial under the Interstate Agreement on Detainers Act, Tᴇx.Cᴏᴅᴇ Cʀɪᴍ. Pʀᴏᴄ. Aɴɴ. art. 51.14, art. IV (West 2006) ("IADA"). Appellant argues that the continuances he requested did not delay the trial.

**Background**

Appellant was indicted on September 25, 2007 for the offense of aggravated robbery. While a prisoner in New Mexico, appellant mailed a handwritten motion to dismiss to the trial court.[1] This motion alleged an IADA Article III violation, that is, the failure to try appellant within 180 days based on his request for a speedy trial in Texas. Pursuant to a state detainer and request for temporary custody, appellant was transferred from a New Mexico prison to the Dallas County jail. On the date of trial, appellant filed a second motion to dismiss. The second motion alleged an IADA Article IV violation, that is, the failure to try appellant within 120 days based on the State's request to try appellant. This appeal concerns only the alleged Article IV violation.

In order to address appellant's contention, we arrange the major events in chronological order based upon docket entries, documents in the record, and statements of counsel and the trial court.

September 30, 2008: first motion to dismiss (alleged violations of Article III of IADA and appellant's federal constitutional right to a speedy trial)

October 6, 2008: appointment of counsel for appellant

October 7, 2008: first of two pass slips; court-appointed counsel in Dallas agreed

to continue case for jury trial to December 8, 2008

December 4, 2008: appellant arrived at Dallas County jail

December 8, 2008: demand for speedy trial (appellant "demand(ed) that his case be set for trial immediately") and motion to dismiss (alleged violations of appellant's federal and state constitutional rights to a speedy trial)[2]

December 11, 2008: defense continuance of motion to dismiss

January 22, 2009: defense continuance of motion to dismiss

January 29, 2009: defense continuance of motion to dismiss

February 4, 2009: defense continuance of motion to dismiss

February 5, 2009: second of two pass slips; counsel agreed to continue case to February 12, 2009 for hearing on motion to dismiss

February 12, 2009: hearing on first motion to dismiss (Article III claim); motion to dismiss denied; jury trial set for July 13, 2009

April 6, 2009: counsel agreed to advance the jury trial to June 8, 2009

June 8, 2009: second motion to dismiss (alleged violation of Article IV of IADA) heard prior to jury selection; motion denied; jury trial commenced.

The record includes two pass slips addressed to the trial court. The pass slips listed various purposes for the continuances sought.[3] Both pass slips were signed by counsel for the State and for

---

1. This motion was mailed and considered "filed" on September 30, 2008.

2. The motion to dismiss contained an order showing it was denied by the trial court. The order bore no date.

3. The purposes included "Announcement," "Agreed plea of guilty," "Open plea of guilty," "Jury Trial (submit Order Setting for Trial)," "Trial Before the Court (submit Order Setting . . .)," "Motion to Suppress (with no trial setting)," and "Other _____."

appellant, and were, on their face, agreed requests for continuance.

At the February 12, 2009 hearing on the first motion to dismiss, appellant stated he had not had sufficient time to obtain the necessary evidence from the New Mexico authorities to support his Article III claim and wanted to pursue out-of-state subpoenas.[4] The State replied that appellant's efforts would "circumvent the clearly-enumerated provisions of the Interstate Agreement on Detainers" and that "we need to proceed with" trial. The State opposed any further delay. The trial court denied the motion and stated that "[t]he next step is for the case to be set for trial, if that's the Defense's option. But, at this time, Defense has not met its burden." The case was continued to July 13, 2009 for jury trial. However, on April 6, 2009, the jury trial date was moved up by agreement to June 8, 2009.

On the day of trial, the trial court heard appellant's second motion to dismiss wherein appellant raised his Article IV claim. Appellant argued his trial had not commenced until after the statutory 120-day period expired in violation of his right to a speedy trial under the IADA and that the first motion to dismiss based on other grounds had not delayed the jury trial. Appellant also stated counsel for both parties had previously agreed to move up the scheduled July 2009 jury trial date to June 8, 2009.[5] The State responded that on several occasions between December 2008 and February 2009, appellant had not been ready for the hearing on his motion. The court noted five continuances caused by appellant—four of which were during the relevant period and caused by his motions to dismiss.[6] Appellant responded that he "in no way caused a delay as far as the jury trial."[7] The trial court denied the

4. Appellant admitted he was not ready to sustain his burden of proof and needed to explore further discovery.

5. This agreement is reflected in the docket entry showing that on April 6, 2009 this case was advanced to June 8, 2009 for jury trial.

6. The State advised the trial court that appellant had requested the continuances between December 8, 2008 and the February 12, 2009 hearing in order to afford time to obtain relevant documentation from the New Mexico correctional facility, to prepare for the hearing, and to locate co-counsel to assist in his first motion to dismiss based on an alleged Article III violation. Appellant's counsel did not challenge or contradict the State's representations. Appellant's counsel did contend these continuances and the February 12 hearing "in no way delayed the jury trial" and were "independent settings" unrelated to the jury trial.

7. [STATE]: When he needed cocounsel on one of the settings to argue the appellate issues, the interstatement (sic) agreements when he requested an investigator to go to New Mexico; when he came—when we were talking about what documents he still needed to get from the New Mexico correctional facility; when we discussed what documents he needed from Mr. Kirvin's advocate that helped him fill out some paperwork.

THE COURT: Well, according to the court records, the Defense filed a request for jury trial on October 7th of 2008, resetting it to December 8th, 2008. At that point on December 11th the Defense filed a reset requesting not a jury trial date, but a motion to dismiss date thereby taking the case off the trial docket. That was done again on June 22nd (sic) again done on January 22nd and again done on February 4th.

It appears the Defense has abandoned their request for a jury trial and instead opted for several motions to dismiss. With that, the Court will deny the Motion to Dismiss.

[DEFENSE]: Judge, may I argue or just state my case I guess.

THE COURT: Go ahead.

[DEFENSE]: The Court requires that when a case get—the Court requires that a case be set for something as the Court is well aware. But when you subsequently request a hearing, you have to put a pass slip in. And so that in the sense that I'm required to set something for a hearing, doesn't in any way [mean] that I'm abandoning my re-

motion to dismiss, concluding that, as early as December 8, 2008, appellant did not request a jury trial, but instead requested a hearing on his pretrial motion to dismiss. The case proceeded to trial.

**Issue**

We must determine whether appellant's agreements and requested continuances tolled the 120–day statutory period.

**Analysis**

We review the trial court's ruling de novo. *State v. Miles,* 101 S.W.3d 180, 183 (Tex.App.-Dallas 2003, no pet.); *State v. Sephus,* 32 S.W.3d 369, 372 (Tex.App.-Waco 2000, pet. ref'd).[8]

■ The IADA is a congressionally sanctioned compact between the United States and the states, including Texas, that have adopted it. *Miles,* 101 S.W.3d at 183. The statute's purpose is "to provide for the speedy disposition of charges filed in one jurisdiction against prisoners who are serving sentences in another jurisdiction." *Morganfield v. State,* 919 S.W.2d 731, 733 (Tex.App.-San Antonio 1996, no pet.) (quoting *Birdwell v. Skeen,* 983 F.2d 1332, 1335 (5th Cir.1993)). The IADA is a federal law subject to federal construction. *New York v. Hill,* 528 U.S. 110, 111, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000). The IADA has been described as a measure enacted to "avoid prosecutorial delay." *Ex parte Saylor,* 734 S.W.2d 55, 57 (Tex.App.-Houston [1st Dist.] 1987, no pet.).

■ The IADA may be invoked by either the prisoner or the State. Under Article III of the IADA, the return and trial of the out-of-state prisoner are invoked by the prisoner himself. Tex.Code Crim. Proc. art 51.14, art. III(a). Under Article IV of the IADA, it is the State that invokes the provisions of the IADA. *Id.* art. 51.14, art. IV(a). On appeal, appellant asserts only that he was denied a speedy trial pursuant to Article IV of the IADA. Specifically, appellant charges the State did not—as the IADA requires—bring him to trial within 120 days of his arrival in Texas. *See id.* art. 51.14, art. IV(c).

Article IV provides:

> In respect of any proceeding made possible by this article, trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

*Id.* If a person is not brought to trial within 120 days, the indictment must be dismissed with prejudice. *Id.* art. 51.14, art. V(c).

Tolling of the 120–day period occurs if the trial court grants a necessary or reasonable continuance after a showing of good cause is made in open court, with the defendant or his attorney present. *Id.* art. 51.14, art. IV(c); *Morganfield,* 919 S.W.2d at 735. In *Morganfield,* the court concluded the length of the continuance can be subtracted from the total number of days between the book-in date and the first day of trial. 919 S.W.2d at 735. In other

---

quest for a jury trial. I'm simply informing the Court that we need a hearing. So by filing a pass slip stating that we want a hearing that's just letting the Court be aware that we are requesting a hearing so the Court can schedule it, order my client down or whatever the case may be.

We have in no way caused a delay as far as the jury trial.

**8.** If the trial court had made findings of fact concerning its Article IV ruling, we would review the findings supporting that decision under the clearly erroneous standard. *Miles,* 101 S.W.3d at 183; *Sephus,* 32 S.W.3d at 372. The court did not make such findings in this case.

words, the time period within which the State must commence trial is extended when the trial court grants a necessary or reasonable continuance. *Bell v. State*, 768 S.W.2d 790, 801 (Tex.App.-Houston [14th Dist.] 1989, pet. ref'd).

The IADA establishes distinct requirements for a continuance: (1) competent jurisdiction, (2) that the continuance be granted in open court, (3) that the defendant or his counsel be present, (4) that the movant demonstrate good cause for the continuance, and (5) that the continuance be necessary or reasonable. *Birdwell*, 983 F.2d at 1336. We treat agreed resettings as continuances that are deemed necessary and reasonable. *Petrick v. State*, 832 S.W.2d 767, 772 (Tex. App.-Houston [1st Dist.] 1992, pet. ref'd); *Schin v. State*, 744 S.W.2d 370, 375 (Tex. App.-Dallas 1988, pet. ref'd); *Saylor*, 734 S.W.2d at 56. In *Huffines v. State*, 646 S.W.2d 612, 614 (Tex.App.-Dallas 1983, pet. ref'd), this Court held that "where the State and the accused agree to a continuance in the record, and no other explanation therefor is provided by the record, we must deem the continuance 'necessary and reasonable' as provided by Article IV(c)."

Appellant's personal consent is not required; counsel's signature is sufficient. *Petrick*, 832 S.W.2d at 772. Further, the "open court" requirement was intended to "prohibit ex parte and sua sponte continuances" and does not mandate a formal proceeding. *Snyder v. Sumner*, 960 F.2d 1448, 1457 (9th Cir.1992); *United States v. Odom*, 674 F.2d 228, 231(4th Cir.1982).

Reasonable delays caused by defense motions may toll the statutory period. In *New York v. Hill*, the Supreme Court observed: "Defense counsel filed several motions, which, it is uncontested, tolled the time limits during their pendency."[9] 528 U.S. at 113, 120 S.Ct. 659. Requiring a case to be dismissed when a time overrun is occasioned by a defendant's motion or request for continuance would be tantamount to "mousetrapping of a rather egregious order." *United States v. Cephas*, 937 F.2d 816, 819 (2d Cir.1991); *United States v. Shandell*, 800 F.2d 322, 324 (2d Cir.1986).[10]

Appellant was incarcerated in New Mexico when he was indicted in Dallas County in the instant case. He was booked into the Dallas County jail on De-

**9.** In the state decision, *People v. Hill*, 92 N.Y.2d 406, 681 N.Y.S.2d 775, 704 N.E.2d 542 (1998), the court emphasized that time periods taken up by defense motions constitute delays that qualify as necessary or reasonable continuances.

**10.** *See also United States v. Winters*, 600 F.3d 963, 970 (8th Cir.2010) (excludable time under Article IV included "time from the filing of a defendant's motion to suppress until the conclusion of the appellate process directly attributable to that motion"); *United States v. Ellerbe*, 372 F.3d 462, 468 (D.C.Cir.2004) ("[P]eriods of delays caused by the defendant's own actions" toll the 180–day period under Article III); *United States v. Neal*, 36 F.3d 1190, 1210 (1st Cir.1994) ("[D]elay attributable to the disposition of motions filed by the defendant, himself, is excludable from the 120–day computation" under Article IV);

*United States v. Johnson*, 953 F.2d 1167, 1172 (9th Cir.1991) ("Where delay is excludable under the Speedy Trial Act because it is attributable to a defendant's own motions, the running of the Interstate Detainers Act's speedy trial clock is also tolled" under Article III); *Cephas*, 937 F.2d at 821 (time when "there was a defense motion pending" was excludable time under Articles III and IV); *United States v. Dawn*, 900 F.2d 1132, 1136 (7th Cir.1990) (180–day period of Article III was "tolled during the pendency of [the defendant's] motion to dismiss"); *United States v. Taylor*, 861 F.2d 316, 321 (1st Cir.1988) (under Article IV, "a defendant waives the 120–day limitation during the time it takes to resolve matters raised by him"); *United States v. Robinson*, 290 F.Supp.2d 808, 817 (E.D.Mich.2003).

cember 4, 2008, which the parties represent to be his arrival date under the statute. However, appellant had previously agreed to continue the case from October 7, 2008 until December 8, 2008. Thus, the statutory period was tolled during the period between December 4 and December 8, 2008.

■ Excluding the period between December 4, 2008 and December 8, 2008, the 120–day period would extend to April 7, 2009. On April 6, 2009 appellant agreed to accelerate the trial date from July 13 to June 8. Thus, during the relevant 120–day statutory period, appellant agreed to the trial date of June 8, 2009. Because appellant assented to the trial date, he is precluded from complaining that the trial date was outside the 120–day period. *See Hill*, 528 U.S. at 114–16, 120 S.Ct. 659 (agreement to trial date outside time period); *see also Stigger v. State*, No. 06–06–00248–CR, 2007 WL 2131715, at *3 (Tex. App.-Texarkana July 26, 2007, no pet.) (mem. op., not designated for publication).

■ There is a second and equally compelling reason why the June 2009 trial date complies with the IADA. During the December 8, 2008 to February 12, 2009 time period, appellant requested and obtained several continuances of the pretrial hearing related to his first motion to dismiss. One of these continuances is reflected in the second pass slip dated February 5, 2009.[11] During the February 12, 2009 hearing, appellant sought yet another continuance on the ground he needed additional discovery. As the State acquiesced in the continuances during this December–February period, we view these continuances as *agreed continuances* and, thus, necessary or reasonable continuances granted for good cause under the IADA. We conclude the statutory period was tolled during the period between December 8, 2008 and February 12, 2009.

Notwithstanding these continuances,[12] appellant argues he caused no delay in conducting the trial. Appellant asserts that the scheduling of pretrial hearings was somehow unrelated to the scheduling of trials. The record does not support this assertion. The trial court clearly stated at the conclusion of the February 12, 2009 hearing that, having heard and disposed of the Article III pretrial motion claim, the court expected the case to be set for trial.[13]

11. In addition, the record before us reflects uncontradicted State's representations to the trial court that appellant requested and obtained a series of continuances during this period.

12. Appellant's authorities fail to support the argument that a continuance requested by a defendant does not constitute a delayed trial. *Morganfield*, 919 S.W.2d at 735 (no motion for continuance and no agreed resetting); *Ravenscraft v. State*, 753 S.W.2d 741, 742–43 (Tex.App.-Austin 1988, no pet.) (no continuance; crowded docket); *Sephus*, 32 S.W.3d at 370–73 (majority opinion did not address continuance, only transfer between state and federal custody); *Engle v. Coker*, 820 S.W.2d 247, 250 (Tex.App.-Beaumont 1991, no pet.) (defendant neither requested a reset nor agreed to a reset requested by the State); *Burton v. State*, 805 S.W.2d 564, 572–75 (Tex.

App.-Dallas 1991, pet. ref'd) (Article IV claim inapplicable because defendant not returned to Texas under IADA). We note appellant does not contend the continuances at issue were unnecessary or unreasonable or were made without good cause shown in open court with appellant or counsel present. Nor does appellant contend that appellant did not request the continuances.

13. The record shows that at the pretrial hearing conducted on February 12, 2009, appellant's counsel admitted the defense was still not ready and requested another continuance. The State objected, responding that this case should be tried. The trial court denied the motion and advised appellant's counsel that the next step would be to set the case for trial: "The next step is for the case to be set for trial, if that's the Defense's option." The rec-

The trial court's statement is a clear signal that appellant's repeated requests for a pretrial hearing had delayed the trial of the case.[14]

In addition, appellant's argument is not consistent with major provisions of the Act. While the IADA provides a mandatory 120-day time period within which to try appellant, it also provides for discretionary continuances that are necessary and reasonable, for good cause shown. Such discretionary continuances include reasonable continuances in order to hear and resolve pretrial motions. *Huffines,* 646 S.W.2d at 614. Agreed continuances to hear pretrial motions, such as appellant's first motion to dismiss, will generally toll the running of the 120-day time period under the IADA.

In this case, appellant filed his first motion to dismiss, requested it be scheduled for a pretrial hearing, and then repeatedly sought continuances until it was heard on February 12, 2009. Appellant argues that even though he sought continuances relative to his first motion to dismiss, he did not "delay" the trial. What appellant fails to acknowledge is that the scheduling of the hearing would automatically delay the trial. Regardless of how appellant casts his position, his request for a pretrial hearing of necessity would delay the trial because the hearing had to be conducted before his trial could commence.

In addition, implicit in appellant's argument is the following rationale: the 120-day period extended from December 4, 2008 until April 3, 2009; after the February 12, 2009 hearing, ample time (about fifty days) remained before the expiration of the 120-day period; and the trial must commence within that 50-day period or the trial court was required to dismiss the case. We reject appellant's position because it completely precludes discretionary continuances clearly permitted by the IADA. If the 120-day period were as inflexible as appellant suggests, a provision for a "continuance" would be illusory.

We conclude appellant's agreements and requested continuances tolled the 120-day statutory period under the IADA. We exclude December 4, 2008 through December 8, 2008 because appellant agreed to this continuance. Appellant assented to the June 8, 2009 trial date during the relevant 120-day statutory period and, therefore, is precluded from complaining that the trial date was outside the 120-day period. Even considering the merits of his complaint, we exclude December 8, 2008 through February 12, 2009, because this period involved necessary and reasonable continuances granted for good cause. Because our computations show the IADA was tolled from December 4, 2008 through February 12, 2009, the trial date of June 8, 2009 is within the statutory 120-day time period. Appellant's first contention is without merit.

## Jury Arguments

In his next two issues, appellant complains (1) "The State struck at the appellant over the shoulder of his counsel by arguing outside the scope of the record that the appellant was not remorseful," and (2) "The State impermissibly commented on the appellant's failure to testify."

ord does show the State urged the case be tried and a trial date was set.

14. The record fails to show appellant registered surprise or disagreement that the case was not set for trial or that appellant moved for an immediate trial. We observe that the pretrial hearing procedure used by the trial court was in recognition of the fact the first motion to dismiss was a dispositive motion which could have terminated the entire proceeding.

## Background

Appellant did not testify at either phase of the trial. During the punishment hearing, the State introduced evidence of appellant's prior criminal record. His record included one conviction of sexual assault of a child in 1989, for which appellant was sentenced to six years' confinement; three convictions of burglary of a vehicle in 1989 and 1990, for which he was sentenced to six years' confinement in each case; and one conviction of aggravated assault of a correctional officer in 1992, for which he was sentenced to ten years' confinement.

During final arguments, the prosecutor reminded the jury of the facts of the case and appellant's extensive prior criminal record and asked for a swift and harsh punishment for a violent offender. During his summation, defense counsel attempted to minimize appellant's convictions, noting in part that they had occurred seventeen to twenty years ago; that the burglary of vehicle cases would be misdemeanors, not felonies, if committed today; and that the sexual assault case only involved sex between a seventeen-year-old and "somebody that is either 14, 15, or 16" that had to be consensual because "if this was by some force [or] use of a weapon, it would be aggravated." Defense counsel continued by stating:

> I'm not going to in any way tell you what he should get. That's your decision and that's solely up to you. But once again, *I do want to reiterate this empathy we have for these two women because what happened to them shouldn't have happened to them.* And I'm not going to try in any well [sic] tell you what you should do, but we would respectfully ask that, as a whole, we respectfully ask that you consider five years in this case. Thank you. (Emphasis added.)

At the conclusion of appellant's argument, the prosecutor made the closing argument:

> [STATE]: *This man wants you to believe that he has sympathy for those victims.*
>
> [DEFENSE]: Objection, Your Honor. Once again Counsel is *striking at my client through a Defense.*
>
> The Court: Overruled. Proceed.
>
> [STATE]: Sympathy. *He is asking for sympathy or he is wanting you to believe that he has sympathy for his people.*
>
> [DEFENSE]: Judge, that is *outside the scope of the testimony.*
>
> The Court: Sustained.
>
> [DEFENSE]: We would ask that you strike.
>
> The Court: The jury will be instructed to disregard that portion of the argument.
>
> [DEFENSE]: And ask for a mistrial.
>
> The Court: Denied. Proceed.
>
> [STATE]: Ladies and gentlemen when I first talked to you during opening statements, I told you that this case was about responsibility[,] taking responsibility for your actions. *Mr. Kirvin [appellant] has never taken responsibility for any of his.*
>
> [DEFENSE]: Your Honor, now Counsel, once again, as in closing argument, *he is going to issue of whether my client testified.* It's wholly inappropriate and he's commenting on his choice not to testify.
>
> [STATE]: Your Honor, he has opened the door talking about his sympathy.
>
> [DEFENSE]: You can't open the door, Judge. You can [sic] open the door.
>
> [STATE]: I should be allowed to address his comments, his arguments.

The Court: Objection is overruled. Proceed.[15]

Thereafter, the prosecutor further explained that the jury had learned "the rest of the story," that appellant had a "career as a violent criminal. He goes out and hurts people. That's what he does." The prosecutor reviewed appellant's prior offenses which, he argued, demonstrated appellant had anger problems and "difficulty controlling his actions that he will lash out at anybody" including the two women involved in this case. The prosecutor argued appellant

> doesn't care. If you think for one minute that he cares about any of the victims in that [ ] pen packet or any of the victims that are sitting here be reasonable. *He has not taken responsibility. He never has and he never will.* (Emphasis added.)

The prosecutor concluded by asking the jury to start its deliberations at sixty years.

### The sympathy complaint

■ In his initial complaint, appellant challenges both (1) the trial court's ruling on his objection to striking at the defendant over counsel's shoulder, and (2) the denial of a mistrial on his objection to argument outside the record. However, appellant's argument under this issue is not focused on these two points.[16] A prosecutor improperly strikes at a defendant over the shoulder of counsel if the prosecutor makes his argument in terms of defense counsel personally so as to impugn defense counsel's character. *See Mosley v. State,* 983 S.W.2d 249, 259 (Tex.Crim. App.1998). Appellant fails to point out how the complained-of jury argument constitutes a personal attack on his attorney's character, and we discern no such attack in the prosecutor's remarks. Further, appellant fails to explain how the complained-of argument was outside the record.

The prosecutor argued that defense counsel's efforts to minimize appellant's criminal record and to commiserate with the plight of the victims were pleas for sympathy which ultimately led to defense counsel's suggestion that the jury set punishment at five years, the minimum term of imprisonment under the law.[17]

The four general areas of proper jury argument are summation of the evidence, reasonable deductions from the evidence, answer to the argument of opposing counsel, and pleas for law enforcement. *Wilson v. State,* 938 S.W.2d 57, 59 (Tex.Crim. App.1996). We conclude that the complained-of arguments fall within the accepted purposes of jury argument, including legitimate responses to appellant's plea

---

15. All emphasis in this excerpt has been added.

16. We observe that appellant's brief argues this issue as if his objections had been to a comment on appellant's failure to testify. Appellant reshapes his actual objections, arguing the prosecutor "seized upon" defense counsel's expression of empathy to comment on appellant's failure to testify. But appellant did not object at this point in the State's argument to a comment on his failure to testify, so he has not preserved that issue for our review. *See Massey v. State,* 933 S.W.2d 141, 157 (Tex.Crim.App.1996) (when complaint on appeal does not comport with objection at trial, issue is not preserved for review). We also observe that while appellant's initial objection was overruled, his second objection was sustained and a court instruction given; only the motion for mistrial was denied. However, appellant has not briefed the trial court's failure to grant a mistrial, thus waiving any complaint on that issue. *See Rankin v. State,* 46 S.W.3d 899, 901 (Tex.Crim.App. 2001).

17. The punishment range was confinement for a term of years not more than ninety-nine years or life nor less than five years and an optional fine not to exceed $10,000.

for leniency. Accordingly, we overrule this issue.

**The comment-on-failure-to-testify complaint**

■ Appellant's other complaint is that the State's argument—appellant "has never taken responsibility for any of his actions"—constituted a comment on appellant's failure to testify.

■ A prosecutor may not comment in closing argument on a defendant's failure to testify. *See* TEX.CODE CRIM. PROC. ANN. art. 38.08 (West 2005). The test to determine whether the argument was a reference to appellant's failure to testify was stated in *Cruz v. State*, 225 S.W.3d 546, 548 (Tex.Crim.App.2007):

> To violate the right against self-incrimination, the offending language must be viewed from the jury's standpoint and the implication that the comment referred to the defendant's failure to testify must be clear. It is not sufficient that the language might be construed as an implied or indirect allusion. The test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify. In applying this standard, the context in which the comment was made must be analyzed to determine whether the language used was of such character.

A remark that might otherwise constitute a comment on a defendant's failure to testify may not be reversible error if the remark was invited by defense counsel's argument. *See, e.g., Nethery v. State,* 692 S.W.2d 686, 703 (Tex.Crim.App.1985) (no reversible error where prosecutor's argument responds to defense argument regarding motive). We review the challenged remark from the standpoint of the jury. *Goff v. State,* 931 S.W.2d 537, 548 (Tex.Crim.App.1996).

In this case, defense counsel concluded his own argument by stating, "I do want to reiterate this empathy that *we* have for these two women because what happened to them shouldn't have happened to them." (Emphasis added.) Defense counsel clearly referred to both counsel and appellant when he argued to the jury that "we" sympathize with both victims. The prosecutor asserts the argument that appellant did not take responsibility for his actions was a response to appellant's argument. The record supports the State's position. During closing arguments, the prosecutor detailed the violent offenses of which appellant had been convicted to demonstrate appellant had not taken responsibility for his actions or really cared about any of the victims. After carefully reviewing each prior offense, the prosecutor concluded that this history of crime showed appellant had no regard for his victims and had shouldered no personal responsibility for his conduct, that he never had, and never would.

In context, we conclude the State's argument was not "manifestly intended or [ ] of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify" when viewed from the jury's standpoint. Instead, we conclude the State's argument was invited by, and made in response to, appellant's argument. *See Wilson,* 938 S.W.2d at 59 (answer to the argument of opposing counsel is proper argument); *see also Goff,* 931 S.W.2d at 548 ("we review the language from the standpoint of the jury"). In addition, as the prosecutor brought his remarks to a conclusion, he reiterated that appellant "has not taken responsibility. He never has and he never will." This argument is quite similar to the complained-of argument. Appellant failed to object and, thus, failed to preserve error, if any. *See Briones v. State,*

12 S.W.3d 126, 129 (Tex.App.-Fort Worth 1999, no pet.) ("Where an impermissible argument is pursued after objection, counsel must lodge a new objection each and every time the objectionable argument is made."). We overrule appellant's second issue.

## Photo Lineup Procedures

In his fourth issue, appellant contends the trial court erred in overruling his objection to the photo lineup procedures, which, he asserts, were impermissibly suggestive. Appellant moved to suppress evidence of his pre-trial identification by the two complaining witnesses, Maurine Graham and Lacinda Lowery. Appellant argued that because the back of appellant's photo showed the name of a third party, it suggested a prior identification. During the hearing,[18] Detective James Brigdon, who conducted the lineup, testified he gathered pictures of individuals with an appearance similar to appellant's. He conducted the photo lineup with each of the complaining witnesses separately. Brigdon stated he put the photographs in a stack for the witness to review; he did not lay the pictures out on the table. He put a hard card behind the picture so nothing would be visible on the back of the photo. Appellant's photo was fourth in Graham's group of photos and fifth in Lowery's group of photos. Brigdon summarized certain instructions he gave to the witnesses: the suspect may or may not be in the lineup; look at the person's face; the witness was not obligated to pick anybody out of the lineup; "See if the person is in there that robbed you." He instructed the witnesses to go through the stack and to keep the photos face up. He testified that each of the complainants picked the photo of appellant from the stack when she reviewed the lineup. In each instance, Brigdon had the witness sign and date the back of appellant's photo and initial the other photos. Appellant's counsel questioned Brigdon concerning the back of the photo of appellant, which was signed not only by the two complaining witnesses, but also by a third party. Counsel asked whether the writing showed through the photo and whether the witnesses could see the signature when handling the photo. Brigdon testified he could not see through the photo; he further testified the complaining witnesses kept the photo flat and never looked at the back of it. Appellant elected not to call either of the complaining witnesses. He objected to the lineup as impermissibly suggestive. The trial court overruled the objection.

Officer Brigdon's testimony at trial largely mirrored the facts adduced at the suppression hearing. *See Barley v. State,* 906 S.W.2d 27, 40 n. 2 (Tex.Crim.App.1995) (appellate review of identification not limited to evidence at hearing if issue re-litigated at trial). Brigdon stated the photos were likely on and off the table top during the process and that the witnesses never looked at the back of the photo. Graham testified that Brigdon laid the pictures out on the table but made no suggestion about her identification. She said she did not touch any of the photos; she remembered appellant's eyes and identified his photo as the photo of the robber. Graham was sure of her identification. Graham remembered seeing a third party's name on the back of appellant's photo when she initialed it. Lowery testified Brigdon had turned the photos over on the table in front of her one at a time; she later stated

---

**18.** Our record does not contain any written motion challenging the photo lineup procedure. We observe that appellant's letter to the court reporter designates a transcription of testimony at pretrial hearings related to the admissibility of in-court identifications.

she could not recall exactly how Brigdon presented the photos. She did remember that she only touched one: she shoved the photo of appellant across the table to the detective when she saw it because it "scared" her. Lowery remembered seeing Graham's name on the back of appellant's photo when she initialed it.[19]

 Whether a photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification is a mixed question of law and fact that does not turn on an evaluation of credibility and demeanor, and we therefore review the issue de novo. *Loserth v. State*, 963 S.W.2d 770, 772–73 (Tex.Crim.App.1998). We ask first whether the out-of-court identification procedure was impermissibly suggestive. If it was, then we ask whether that suggestive procedure gave rise to a very substantial likelihood of irreparable misidentification. *Barley*, 906 S.W.2d at 33. Appellant was required to establish both of these conclusions by clear and convincing evidence in the trial court. *See id.* We review appellant's evidence in light of the "totality of the circumstances" surrounding his case. *See id.*

The record contains no evidence that the complainants looked at the back of any photos while they were examining the photo lineup or that either saw any name on the back of appellant's photo before making the identification. There is nothing more than counsel's argument to suggest that the witnesses could have seen images through the photos as they handled the photos. There is no evidence supporting appellant's claim that the lineup was impermissibly suggestive, particularly because only one witness, Graham, remembered seeing the name of a third party on

the back of appellant's photo and saw it only after she had actually identified appellant's photo. We conclude the photo lineup was not impermissibly suggestive. Having reached that conclusion, we need not address whether the lineup gave rise to a very substantial likelihood of irreparable misidentification. *See id.* We overrule appellant's fourth issue.

### Impeachment of Complainant

██ In his sixth issue, appellant argues the trial court erred in not permitting him to impeach complainant Graham with evidence of her prior criminal convictions. In a lengthy hearing outside the presence of the jury, both attorneys and the trial court questioned Graham concerning her criminal history. Graham acknowledged serving time in Arizona and Texas for a series of offenses, including conspiracy to commit fraud, fraudulent schemes, and theft of property. She testified she was unable to give details about all her offenses because her offenses were "all run together," and some offenses were dismissed if she was already serving time. Counsel questioned Graham concerning records indicating she may have had a 1997 conviction in Arizona for which she received five years of probation. But Graham testified she never was placed on probation, and she was released from prison for the last time on December 1, 1998. The trial court denied appellant's request to use Graham's criminal history to impeach her, stating "there [was] no proof of any sentence being served within the last ten years."[20]

We review the trial court's ruling for an abuse of discretion. *Green v. State*, 934 S.W.2d 92, 101–02 (Tex.Crim.App.1996). Appellant concedes that—because more

---

19. Appellant does not complain on appeal that Lowery saw Graham's name.

20. Appellant's trial, as we discussed under his first issue, began on June 8, 2009.

than ten years had passed since Graham's release from confinement—he could not use the convictions unless specific facts and circumstances established that the probative value of any of Graham's convictions substantially outweighed its prejudicial effect. *See* TEX.R. EVID. 609(b). Appellant does not point to evidence of any specific facts and circumstances that would merit admitting these convictions. Appellant calls Graham "the key eye-witness" in the case, but two other witnesses—including complainant Lowery—also identified appellant. We discern no abuse of discretion in the trial court's decision not to admit Graham's prior criminal history for impeachment purposes. We overrule appellant's sixth issue.

### Continuance

When the trial court denied appellant's request to use Graham's past criminal convictions to impeach her, appellant's counsel orally requested a continuance and followed up his request with a handwritten motion.[21] The written motion stated in its entirety:

> Comes now the Defendant by and through his attorney [and] moves the Court to grant a continuance to allow the defense time to order the documents regarding the prior criminal history of Maureene Graham, thus enabling the Defense to be able to properly impeach said person.

The trial court denied the motion for continuance on the record. In his fifth issue, appellant complains of this denial.

The basic rules concerning continuance of a criminal action are well-settled. The continuance sought by appellant is governed in the first instance by statutes requiring (1) a written motion setting forth

in full the "sufficient cause" for delay, and (2) the writing to be sworn to by a person having personal knowledge of the facts relied on for the continuance. TEX.CODE CRIM. PROC. arts. 29.03, 29.08 (West 2006). We need not address whether appellant's motion sets forth sufficient cause for a continuance because his motion was unsworn. Appellant asks us to make an exception to the requirement that the motion be sworn. He contends we must balance the interests of an expeditious trial against the right of the defendant to present a complete defense; he relies upon the court of appeals' opinion in *Anderson v. State*, 268 S.W.3d 130, 134 (Tex.App.-Corpus Christi 2008), *rev'd*, 301 S.W.3d 276 (Tex.Crim.App.2009). However, as the citation indicates, the court of criminal appeals reversed *Anderson* in 2009, concluding that the right to present a defense is subject to forfeiture. 301 S.W.3d at 281. Therefore, a defendant making an unsworn motion for a continuance fails to preserve his claim for appellate review. *See id.* We conclude appellant's unsworn motion for continuance preserved nothing for our review. We overrule his fifth issue.

We affirm the judgment of the trial court.

Murphy, J., concurs in result only without opinion.

---

**21.** The handwritten motion is not file-stamped, but for purposes of this opinion we will assume the motion was filed.